Lester SMITH

v.

**CITY OF PITTSBURGH, Appellant.**

**No. 84–3501.**

United States Court of Appeals, Third Circuit.

Argued March 28, 1985.

Decided June 12, 1985.

D.R. Pellegrini, City Solicitor, Richard J. Joyce (argued), Zan I. Hodzic, Asst. City Solicitors, Pittsburgh, Pa., for appellant.

Edward A. Olds (argued), Pittsburgh, Pa., for appellee.

Before ALDISERT, Chief Judge, SLOVITER, Circuit Judge, and STAPLETON, District Judge [*].

---

[*] Hon. Walter K. Stapleton, who was Chief Judge, United States District Court for the District of Delaware, sitting by designation at the time of argument, has since been appointed to the Court of Appeals.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

The City of Pittsburgh appeals from the district court's order granting summary judgment and awarding damages to plaintiff Lester Smith on his claim that the City violated the due process clause of the Fourteenth Amendment by discharging him from his employment without affording proper notice and an adequate opportunity to contest the charges. The merits of Smith's claim present difficult legal issues that we need not reach because we conclude, in light of the Supreme Court's recent decision in *Wilson v. Garcia*, ── U.S. ──, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), that Smith's claim was barred by the applicable Pennsylvania statute of limitations.

I.

### FACTS AND PROCEDURAL HISTORY

Lester Smith was a refuse collector for the Department of Environmental Services for the City of Pittsburgh. He was employed under a collective-bargaining agreement that provided for termination only for just cause and subject to resolution of disputes under a grievance-arbitration mechanism. Although the date of Smith's discharge is in dispute, it is undisputed that the City discharged him prior to August 22, 1979 because it concluded that he had fought with a supervisor. Hearings on these allegations had been held on August 15 and 16. The City ultimately sent formal written notice of discharge to Smith on August 21, 1979. No appeal was taken to arbitration.

Smith filed charges of unlawful discrimination on the basis of race with both the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission. There is no indication in the record of any action by either agency. Smith then filed a sketchy complaint *pro se* on March 22, 1982 in the United States District Court for the Western District of

Pennsylvania that complained of the termination but did not allege racial discrimination. The City responded with a Motion to Dismiss or for a More Definite Statement and the court then appointed counsel for Smith, who filed an amended complaint on November 24, 1982 seeking Smith's reinstatement and backpay. The amended complaint alleged that the process afforded Smith "did not comport with the requirements of the 14th Amendment," and that Smith's discharge was "wrongful and the conduct of the City of Pittsburgh violated 42 U.S.C. § 1983." [1]

The City filed a renewed motion to dismiss, contending that the complaint failed to state a claim and was barred by the applicable statute of limitations. The court held a hearing on the City's motion on March 2, 1983, at which it stated it would treat the motion to dismiss as a motion for summary judgment. The parties argued whether Smith had been afforded all the process due. Pittsburgh contended that the statute of limitations should be two years for "a denial of due process without any allegations of a breach of contract," and that Smith's complaint, filed more than two years after his dismissal, was untimely.

The court rejected Pittsburgh's claim that the complaint was untimely, holding that Smith's claim was most analogous to a state law claim of unlawful termination of an employment contract and that the applicable Pennsylvania statute of limitations was six years.

In the same order dated May 4, 1983, the district court denied the City's motion to dismiss the due process claim, based on its "undisputed" finding that Smith had been terminated on August 10, prior to the termination hearings of August 15 and 16. The court held that Smith had been unconstitutionally denied a hearing *prior* to termination and invited a motion for summary judgment from plaintiff. It stated, "The

Court, upon motion by Plaintiff's Attorney, will direct the Defendant City of Pittsburgh to conduct a full hearing stating the grounds for its future action concerning Smith's employment. Smith will be granted the opportunity to challenge the action of Defendant via the grievance machinery." App. at 414.

The City then filed an answer to the complaint, asserting that it had in fact given a pre-termination hearing and that, in any event, the grievance-arbitration procedure was available to Smith and provided him with due process. Pittsburgh sent the court a letter the same day, arguing that the court's factual conclusion was erroneous and that Smith had not been discharged prior to the hearings, but only as of receipt of the formal notice of termination after the August 15 and 16 hearings. The City requested that the court therefore reconsider its Opinion of May 4, 1983 after briefing and oral argument.

Smith did not immediately file the summary judgment motion suggested by the court. In an unorthodox procedure, the court then held a lengthy evidentiary hearing which appears to have been designed to resolve the crucial factual dispute, whether Smith was discharged before or after he was given a hearing by Pittsburgh. Documents were introduced on this issue and both Smith and James Walker, Director of Environmental Services, testified. Smith testified as to the sequence of events surrounding his discharge and Walker testified, *inter alia*, that communications addressed to him before Smith's hearing were internal memoranda, intended only as a recommendation that Smith be discharged.

At the hearing, the district court repeatedly interrupted the presentations, stating that Smith had clearly been terminated prior to the hearing. On September 23, 1983, the court released its findings, stating that it had "determined" that,

---

1. The complaint also alleged that the City had discriminated against Smith because he had been originally hired under a program funded through the Comprehensive Employment and Training Act (CETA). The district court granted Pittsburgh's motion to dismiss the CETA-based claim, which decision is not contested on appeal.

The evidence is clear beyond any doubt ... that this man was terminated or discharged prior to his being given a hearing, and when he finally was given a hearing, notice that there was going to be a hearing, the notice didn't indicate any reason, as I could recollect, why he was to be discharged, or why he was to be given a hearing even....

App. at 284. The court found the language of a letter from the Assistant Director to Walker dated August 13 to be so clearly notice of termination that reflected a decision already made, that "no person in his right mind ... could find any other way," and that the "clear, undisputed evidence in this case was that Lester Smith was not accorded his due process rights."

At the close of this hearing the court again invited the filing of formal motions for summary judgment, together with proposed "findings of fact and conclusions of law," and stated that further hearings would be limited to damages questions. The parties complied with the court's invitation and filed cross motions for summary judgment together with the requested proposed findings of fact and conclusions of law.

In their proposed findings of fact, the parties presented conflicting factual positions regarding the reason for the discharge, the historical facts surrounding the discharge, the meaning of the written memoranda, and the scope of the hearing that Smith was given. Together with its proposed findings of fact, Pittsburgh filed affidavits of its employees supporting its factual position. Despite these conflicting accounts, the court entered summary judgment on liability for Smith. The court again rejected the City's contention that Smith had been given a pre-termination hearing as contrary to "the overwhelming weight of the evidence," and proceeded to decide whether or not his post-termination hearing "cured the defect" and whether the presence or use of the post-termination grievance-arbitration procedure provided adequate due process safeguards. *Smith v. City of Pittsburgh*, 585 F.Supp. 941

(W.D.Pa.1984). The court concluded that Smith had a protected property interest in his job, that due process required the opportunity to defend this interest prior to termination, that Smith's collective bargaining agreement could not establish less stringent requisites, and that, in any event, Smith never received adequate notice of the reasons for his dismissal in time to prepare a response. The court concluded that Smith was entitled to judgment as a matter of law "on the undisputed facts." *Id.* at 948.

Several months later, after holding a hearing on damages, the district court entered an order amending the judgment to award Smith backpay of $66,701.43, subject to reductions relating to health benefits and tax withholding. The City of Pittsburgh filed a timely appeal from this final order.

After oral argument, we ordered that this case be held c.a.v. pending the decision of the Supreme Court in *Wilson v. Garcia*, —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), and *Springfield Township School District v. Knoll*, —— U.S. ——, 105 S.Ct. 2065, 85 L.Ed.2d 275 (1985), addressing the application of statutes of limitation to actions brought under 42 U.S.C. § 1983 (1982). We then obtained supplemental briefing from the parties regarding the effect of these decisions on this action.

II.

SUMMARY JUDGMENT PROCEDURE
FOLLOWED IN THE
DISTRICT COURT

Because of our determination that the statute of limitations is dispositive of the appeal, we do not rule on the merits of Smith's claim. We are obliged, however, to comment on the procedure followed by the district court. As the Notes of the Advisory Committee clearly state, "Summary judgment procedure is a method for promptly disposing of actions in which there is no genuine issue as to any material fact." Rule 56(c) is explicit as to the mat-

ters that can form the basis of such a judgment. It provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

■ There is no reference to any evidentiary hearing, for obvious reasons. If there is a dispute as to a fact that can only be determined after a hearing, then the issue may not be resolved by summary judgment. The procedure followed in this case by which the court directed a hearing and made factual determinations on which the summary judgment was predicated was unauthorized and improper. It would have required reversal had the Supreme Court decision clarifying the statute of limitations issue not intervened.

### III.

### STATUTE OF LIMITATIONS

In *Wilson v. Garcia,* —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Supreme Court resolved the conflict that had arisen in the courts of appeals as to the method for choosing the applicable state limitation period for suits under 42 U.S.C. § 1983. We review briefly the law of this circuit as established prior to the Court's decision before turning to decide its effect.

■ The Civil Rights Acts of the Reconstruction era, like many federal statutes, contain no specific statute of limitations. Under 42 U.S.C. § 1988 (1982), which governs several aspects of decisionmaking under those acts, the courts are authorized to borrow the forum state's appropriate statute of limitations as the rule of decision, if that choice "is not inconsistent with the Constitution and laws of the United States." In applying 42 U.S.C. § 1988, "the controlling period would ordinarily be the most appropriate one provided by state law," *Board of Regents v. Tomanio,* 446 U.S. 478, 485, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1980) (quoting *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975) ), or the "most analogous" state statute of limitations, *id.* at 488, 100 S.Ct at 1797.

The principal difficulty the lower courts found in applying this rule was the proper characterization of claims under 42 U.S.C. § 1983 so that the most analogous state limitation could be chosen. The courts of appeals were generally divided between two different approaches. As the Tenth Circuit explained, "The fundamental point of disagreement in selecting a statute of limitations for civil rights actions is whether such claims should be characterized in terms of the specific facts generating a particular suit, or whether a more general characterization of such claims should be applied regardless of the discrete facts involved." *Garcia v. Wilson,* 731 F.2d 640, 648 (10th Cir.1984) (in banc), *aff'd,* —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

This circuit decided to characterize actions under § 1983 individually, "on an ad hoc basis, focusing on 'the relief sought and the type of injury alleged.' ... Our approach has been to characterize 'the essential nature of the federal claim within the scheme created by the various state statutes of limitation.'" *Fitzgerald v. Larson,* 741 F.2d 32, 35 (3d Cir.1984) (citations omitted), *vacated and remanded in light of Wilson v. Garcia,* 105 S.Ct. 2108 (Apr. 22, 1985). In *Polite v. Diehl,* 507 F.2d 119, 123 (3d Cir.1974) (in banc), we rejected the alternative of applying uniformly a single limitation from a state to all § 1983 actions and instead distinguished among claims. We held that portions of plaintiff's § 1983 claim alleging unconstitutional detention and incarceration were governed by Pennsylvania's one-year limitation for state law actions for false arrest; that the portion of the claim alleging physical abuse by state policemen and a resulting coerced guilty plea was governed by Pennsylvania's two-year personal injury limitation; and that plaintiff's claim for unlawful seizure of his automobile was

analogous to and governed by the state's six-year limitation applicable to state law actions for the recovery of goods. 507 F.2d at 122–23.

Using this approach we later held that the six-year residuary limitation of 42 Pa. Cons.Stat.Ann. § 5527(6) (Purdon 1981) applied to § 1983 claims charging unconstitutional termination of employment without due process, such as that brought here by Smith. *See Perri v. Aytch,* 724 F.2d 362, 368 (3d Cir.1983). *Cf. Fitzgerald v. Larson,* 741 F.2d at 36 (applying six-year statute to claim of discharge in violation of First Amendment right of association); *Knoll v. Springfield Township School District,* 699 F.2d 137, 144–45 (3d Cir.1983) (six-year limit applies to claim of discriminatory failure to promote an employee on the basis of sex), *vacated and remanded,* —— U.S. ——, 105 S.Ct. 2065, 85 L.Ed.2d 275 (1985); *Skehan v. Trustees of Bloomsburg State College,* 590 F.2d 470, 477 (3d Cir.1978) (six-year limit applies to claim of non-renewal of employment contract for exercise of First Amendment rights and denial of due process), *cert. denied,* 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979); *Davis v. United States Steel Supply,* 581 F.2d 335, 341 (3d Cir.1978) (six-year limit applies to claim of unlawful discharge on the basis of race).

In *Wilson v. Garcia,* the Supreme Court approved, instead, the contrary approach that the Tenth Circuit had used in that case. The Court characterized all § 1983 actions uniformly as personal injury actions and applied to all § 1983 actions the state statute of limitations governing personal injury actions. *Wilson v. Garcia,* —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).[2]

The Court held first that the proper characterization of actions under 42 U.S.C. § 1983 was a "question of federal law" and that "[o]nly the length of the limitations period, and closely related questions of tolling and application, are governed by state

law." 105 S.Ct. at 1943. Although any analogy to state law causes of action was "bound to be imperfect", "practical considerations" explained why § 1983 was well served by a single, broad characterization for statute of limitations purposes. *Id.* at 1945. The Court reasoned that it was a time-consuming and uncertain process to analogize the facts of each § 1983 action to particular claims at state law. As the Court stated, "Almost every § 1983 claim can be favorably analogized to more than one of the ancient common-law forms of action, each of which may be governed by a different statute of limitations." The Court concluded:

> The simplicity of the admonition in § 1988 is consistent with the assumption that Congress intended the identification of the appropriate statute of limitations to be an uncomplicated task for judges, lawyers and litigants, rather than a source of uncertainty, and unproductive and ever increasing litigation. Moreover, the legislative purpose to create an effective remedy for the enforcement of federal civil rights is obstructed by uncertainty in the applicable statute of limitations, for scarce resources may be dissipated by useless litigation on collateral matters.

*Id.*

The Court then turned to the task of choosing an appropriate characterization. It concluded that § 1983 actions should be viewed as tort actions to redress claims of personal injuries. This choice was not only consistent with the historical background of the Civil Rights Act, but also

> minimize[d] the risk that the choice of a state statute of limitations would not fairly serve the federal interests vindicated by § 1983. General personal injury actions, sounding in tort, constitute a major part of the total volume of civil litigation in the state courts today, and probably did so in 1871 when § 1983 was enacted. It is most unlikely that the

---

**2.** The Supreme Court the same day vacated and remanded the judgment of this court in a companion case, *Springfield Township School Dis-* *trict v. Knoll,* —— U.S. ——, 105 S.Ct. 2065, 85 L.Ed.2d 275 (1985), for further consideration in light of *Wilson v. Garcia.*

period of limitations applicable to such claims ever was, or ever would be, fixed in a way that would discriminate against federal claims, or be inconsistent with federal law in any respect.

105 S.Ct. at 1949.

■ We conclude, and the parties agree, that after *Wilson v. Garcia* the appropriate limitation period for § 1983 actions brought in Pennsylvania is the two-year limitation provided by 42 Pa.Cons.Stat.Ann. § 5524, which governs both "[a]n action to recover damages for injuries to the person ... caused by the wrongful act or neglect or unlawful violence or negligence of another," § 5524(2) (Purdon Supp.1985), and "[a]ny other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct ..." § 4424(7) (Purdon Supp.1985). We reached the same conclusion on remand in *Knoll v. Springfield Township School District,* 763 F.2d 584 (3d Cir.1985). The parties also agree that Smith's action would be untimely under this rule because it was filed more than two years after the events surrounding his discharge. The only dispute is whether *Wilson v. Garcia* should be applied retrospectively to bar Smith's claim, or whether the six-year limitation chosen in *Perri v. Aytch* and anticipated by the district court should be applied to allow maintenance of Smith's claim. We did not need to decide this question on remand in *Knoll* because plaintiff's claim was held timely both prior to *Wilson v. Garcia* and following it as filed less than two years from the injury.

## IV.

### RETROSPECTIVE APPLICATION

■ The Supreme Court addressed the issue of retrospective application of changes in the law of statutes of limitation in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971), applying a three-part analysis:

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

(citations omitted). We turn to analyze Smith's action in light of these factors.

### A. *The Change from Prior Law*

First, did the decision in *Wilson v. Garcia* "establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed"? *Chevron,* 404 U.S. at 106, 92 S.Ct. at 355. It is true, as Smith argues, that *Wilson v. Garcia* held that federal courts must select one state statute of limitations "for *all* § 1983 claims", 105 S.Ct. at 1947 (emphasis added), and thereby overturned our precedent under which we applied different limitation periods to different types of § 1983 claims. *See, e.g., Perri v. Aytch,* 724 F.2d 362 (3d Cir.1983); *Polite v. Diehl,* 507 F.2d at 119 (3d Cir.1974) (in banc); *Hileman v. Knable,* 391 F.2d 596, 597–98 (3d Cir.1968) (per curiam). It is also true that the Supreme Court had not signaled or foreshadowed its disapproval of this method prior to *Wilson v. Garcia. See Garcia v. Wilson,* 731 F.2d at 643; *see also Wilson v. Garcia,* 105 S.Ct. at 1949–53 (1985) (O'Connor, J., dissenting).

However, this alone does not mean that Smith satisfies the first *Chevron* factor for nonretrospective application of the *Wilson v. Garcia* rule. We have held that where application of the law had been erratic and

inconsistent, without clear precedent on which plaintiff could reasonably rely in waiting to file suit, a subsequent Supreme Court decision on the applicable limitations period cannot be said to have overruled clear past precedent on which the litigants may have relied. *See Perez v. Dana Corp.*, 718 F.2d 581, 585–88 (3d Cir.1983); *Bronze Shields, Inc. v. New Jersey Department of Civil Service*, 667 F.2d 1074, 1085 (3d Cir.1981), *cert. denied*, 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384 (1982).

Smith filed his suit in March 1982. As of that time, this court had not chosen the appropriate Pennsylvania statute of limitations for a claim of unconstitutional termination of employment without due process. Moreover, the district courts in this circuit were thoroughly divided on the question both before and throughout the period between Smith's termination and his filing of this suit. Several decisions applied the two-year Pennsylvania personal injury limitation now applicable to all § 1983 actions. *See Kelly v. City of Philadelphia*, 552 F.Supp. 574, 577 (E.D.Pa.1982), *aff'd mem.*, 725 F.2d 668 (3d Cir.1983); *Mazur v. Department of Revenue*, 516 F.Supp. 1328, 1332 (M.D.Pa.1981), *aff'd mem.*, 681 F.2d 807 (3d Cir.1982); *West v. Williamsport Area Community College*, 492 F.Supp. 90, 98 (M.D.Pa.1980); *Eubanks v. Clarke*, 434 F.Supp. 1022, 1029–30 (E.D.Pa.1977). Some applied, in whole or in part, a six-month residuary limit established by 42 Pa.Cons.Stat.Ann. § 5522(b)(1) for claims against state officers not covered by another limitation period. *Cf. Clyde v. Thornburgh*, 533 F.Supp. 279, 286 (E.D.Pa.1982) (applying six-month limit to discharge for violation of First Amendment rights); *Kelly v. City of Philadelphia*, 552 F.Supp. at 577 (applying six-month rule to portion of procedural due process claim and two-year

rule to remainder). We have discovered only one published district court opinion that assumes that the appropriate limitation was six years. *See Yatzor v. Allen*, 365 F.Supp. 875, 876 (W.D.Pa.1973).

The decisions of this court that rejected the six-month and the two-year limitations and applied a six-year limitation to claims based on termination without procedural due process were handed down after Smith filed this suit. *Perri v. Aytch*, 724 F.2d at 368 (choosing six-year limit); *cf. Knoll v. Springfield Township School District*, 699 F.2d at 141–44 (rejecting six-month limitation as too short and choosing six-year limit for claim of racially motivated discharge).[3] The absence of any definitive holding of this court choosing a limitation longer than two years and the substantial support in opinions of the district courts in this circuit for the two-year limitation should have put Smith on notice that it would not have been reasonable to wait more than two years from August 1979 to file suit. This case is therefore distinguishable from *Jackson v. City of Bloomfield*, 731 F.2d 652, 654 (10th Cir.1984) (in banc) and *Abbitt v. Franklin*, 731 F.2d 661, 663 (10th Cir.1984) (in banc), where the Tenth Circuit declined to apply its *Garcia* decision retrospectively because plaintiffs could justifiably have relied on that court's prior precedent.

B. *Purposes of Wilson v. Garcia*

Under *Chevron*, we must also "weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." 404 U.S. at 106–07, 92 S.Ct. at 355–56 (quoting *Linkletter v. Walker*, 381 U.S. 618, 629, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601 (1965)). The decision in *Wilson v. Garcia* had several purposes. Most important, it was designed

---

**3.** In all of the earlier cases applying the six-year limitation, there was a challenge to the legality of the substantive basis for the termination. *See, e.g., Davis v. United States Steel Supply*, 581 F.2d at 338 (racially motivated discharge); *Skehan v. Trustees of Bloomsburg State College*, 590 F.2d at 477 (First Amendment discharge and procedural due process without discussion of

any distinction). Pennsylvania's 1978 revision of its statute of limitations scheme undercut the precedential value of these earlier decisions. The district courts relied on the new statute in selecting a six-month or two-year statute of limitations rather than the six-year residuary period applied in *Skehan* and *Davis*. *See* cases cited in text at p. 193 *supra*.

**196**

to further "federal interests in uniformity, certainty, and the minimization of unnecessary litigation." 105 S.Ct. at 1947. The choice of the personal injury limitation over other possible choices also minimized the risk that states would provide a discriminatorily short period of limitations or one inadequate to serve the federal interests of § 1983. *Id.* at 1949.

In *Perez v. Dana Corp.*, 718 F.2d 581 (3d Cir.1983), we were faced with an inquiry similar to that before us now, but there we were required to determine whether to apply retrospectively the six-month statute of limitations established in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), for filing claims under § 301 of the LMRA. Our consideration in *Perez* of this *Chevron* factor has some applicability to this case as well. We said:

> We believe that that balance is best struck if *DelCostello* is applied retroactively. Given the uncertainty that has characterized the borrowing of state statutes of limitations for *Vaca-Hines* actions, simple application of section 10(b)'s statute of limitations will serve to increase the uniformity of treatment among similar claims. More important, the imposition of the six-month limitations period will promote the finality of grievance-arbitration decisions and prevent the belated raising of claims after years have passed. Finally, the retrospective application of section 10(b) will not undermine the goal of providing adequate opportunity for the employee to vindicate his rights, for the Court has determined, in effect, that six months is long enough. We thus find that the second *Chevron* factor counsels in favor of retroactivity.

718 F.2d at 588.

The similar purposes of *Wilson v. Garcia* in promoting uniformity and the minimization of unnecessary litigation would be served by applying the two-year statute of limitations to all plaintiffs, whether or not their claims are already in litigation, if the other *Chevron* factors favor such a result.

Although we cannot say that the policies referred to in *Wilson v. Garcia* militate clearly in favor of retrospective application, neither do they militate against such application.

### C. *The Equities of Retrospective Application*

In *Chevron*, the Court stated that a third factor to be considered is the avoidance of harsh, injust, or inequitable results. 404 U.S. at 107, 92 S.Ct. at 355. Where a plaintiff could have reasonably waited to file suit under the established prior rule, it would be inequitable to say he had slept on his rights because of a later and unforeseeable Supreme Court decision. *Id.* at 108, 92 S.Ct. at 356. As discussed above, however, plaintiffs in this circuit, including Smith, could not reasonably have relied on the assumption that a limitations period longer than two years would apply to their § 1983 claims based on termination without due process until our decision in *Knoll v. Springfield Township School District*, 699 F.2d at 144–45, which was decided on January 27, 1983, and in *Perri v. Aytch*, 724 F.2d at 362, which was decided on December 22, 1983.

We also note that the City of Pittsburgh has consistently maintained that Smith's action was barred because of the statute of limitations, has put Smith on notice by pleading that defense, and raised it again in its motion for summary judgment. Also, this is not a case that was tried or in which there was already massive discovery, although as discussed above the summary judgment proceedings were protracted by the procedure followed by the court. On balance, we cannot say it would be inequitable or harsh to apply *Wilson v. Garcia* retrospectively to bar Smith's claim.

### V.

### CONCLUSION

We conclude, considering all the *Chevron* factors, that *Wilson v. Garcia* should be applied retrospectively to Smith's claim as requiring application of the two-year personal injury limitation of 42 Pa.Cons.

Stat.Ann. § 5524. Although *Wilson v. Garcia* was a break with the analytical approach of this and some other courts, the Court's decision would not operate in this case to establish an unexpectedly shorter limitation period for Smith's claim. We further conclude that neither the policies underlying *Wilson v. Garcia* nor the equities of the case militate strongly against retrospective application.

We will, therefore, reverse the order of the district court granting summary judgment to Smith, and we will direct the court to enter judgment for the City of Pittsburgh. Each party to bear its own costs.