**Joseph Leon FOWLER, Jr., Plaintiff,**

v.

**CITY OF LOUISVILLE, et al., Defendants.**

**No. C 83–0890–L(B).**

United States District Court, W.D. Kentucky, Louisville Division.

Oct. 31, 1985.

Philip C. Kimball, Louisville, Ky., for plaintiff.

James H. Highfield, Paul Guagliardo, Louisville, Ky., for defendants.

## MEMORANDUM

BALLANTINE, District Judge.

This civil rights action, Title 42 U.S.C. Section 1983, is before the Court on cross motions for summary judgment.

Plaintiff, a lieutenant in the Louisville Division of Police, was discharged by the defendants Higgins, then Chief of Police, and Scholtz, then Director of Safety, from his position after he admittedly purchased a stolen examination which was shortly to be given to candidates for captain. Plaintiff intended to take the examination. His discharge was upheld by the defendant Louisville Civil Service Board.

Stripped of its hyperbole, plaintiff's recitation of the background of this action discloses that plaintiff paid an officer named Graham $3,000.00 for the captain's examination. Apparently Graham obtained the examination from two Louisville police officers who eked out their incomes by free lance burglary, including burglary of the Civil Service office.

When Higgins learned of plaintiff's action he resolved to fire him, relying on Louisville Division of Police Rule 126, Section 12. That rule reads: "Any member or employee may be dismissed or suffer such other punishment as may be directed for violation of any of the rules, regulations, or orders or when found guilty of any of the following offenses: * * * * 12. Any other act or omission contrary to good order and discipline." After his discharge, plaintiff appealed to the Civil Service Board which

upheld his discharge. He appealed this decision to the Jefferson Circuit Court which affirmed the action of the Civil Service Board. The decision of the Jefferson Circuit Court was affirmed in an unpublished opinion by the Court of Appeals of Kentucky.

The Court perceives at least two significant impediments to plaintiff's action.

## I. LIMITATIONS

■ The decision of the Civil Service Board was rendered November 29, 1978, and this action was filed September 6, 1983.

In *Wilson v. Garcia*, —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Supreme Court, recognizing the conflict in lower court rulings and the applicable statute of limitations in Section 1983 actions, adopted a bright line rule that the most appropriate statute of limitations is the state statute relating to personal injury claims. The applicable statute in Kentucky is KRS 413.140(1)(a) which establishes a one-year statute of limitations for personal injury actions.

The question then is whether *Wilson v. Garcia* is to be applied retrospectively or prospectively only.

The Court's research has disclosed a conflict in the circuits as to the retrospective application *vel non* of *Wilson*.

In *Jackson v. City of Bloomfield*, 731 F.2d 652 (10th Cir.1984), the Court gave prospective application to *Wilson*. It should be noted, however, that that case was decided before the Supreme Court decision in *Wilson*. The *Wilson* case upon which the Court of Appeals relied was its own decision and the same case which was eventually decided by the Supreme Court. Thus, this Court questions the continued vitality of *City of Bloomfield*.

In *Smith v. City of Pittsburgh*, 764 F.2d 188 (3rd Cir.1985), the court discussed at length the applicability of *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), to *Wilson v. Garcia*. The Court pointed to its decisions which held

"that where application of the law had been erratic and inconsistent, without clear precedent on which plaintiff could reasonably rely in waiting to file suit, a subsequent Supreme Court decision on the applicable limitations period cannot be said to have overruled clear past precedent on which the litigants may have relied." 764 F.2d at 194.

Expanding further on *Chevron*, the *City of Pittsburgh* court weighed the merits and demerits in light of the desirability of furthering federal interest in uniformity, certainty, and minimization of unnecessary litigation. The Court concluded: "Although we cannot say that the policies referred to in *Wilson v. Garcia* militate clearly in favor of retrospective application, neither do they militate against such application."

Finally, the Court considered the equities of retrospective application and determined that it would not be inequitable or harsh to apply Wilson retrospectively.

■ This Court determines that *Wilson v. Garcia* is to be applied retrospectively. In *Smith v. General Motors Corp.*, 747 F.2d 372 (6th Cir.1984), the court held that the Supreme Court's silence on the question of retroactivity in *Del Costello v. Int'l Bro. of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), created an inference that the Supreme Court intended that decision to apply retroactively since it could have either reserved the issue or, as in *Chevron*, given it prospective application only.

The Court finds further support for retrospective application in *Jones v. Preuit & Mauldin*, 763 F.2d 1250 (11th Cir.1985). In that case the court in footnote 2 found that, "the facts cut[ ] in favor of retroactive application of Wilson...."

In sum, this Court concludes that *Wilson v. Garcia* is to be applied retrospectively. Since this circuit has not squarely faced this question, however, the Court will address what we perceive to be the second and equally compelling reason for granting defendant's motion.

## II. RES JUDICATA OR COLLATERAL ESTOPPEL

In *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), respondent had been convicted in a state criminal prosecution. Prior to trial he had sought to suppress certain evidence claiming a Fourth Amendment violation. After his motion to suppress was denied, he was convicted. He was denied federal habeas relief since the state court had given him a full and fair opportunity to litigate his search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Respondent then commenced a Section 1983 action against the police who had seized the evidence.

The Supreme Court recognized the traditional adherence of federal courts to the related doctrines of res judicata and collateral estoppel. Under res judicata a final judgment precludes relitigation of issues that were or could have been raised in the prior action. Under collateral estoppel, once a court has decided to issue a fact or law necessary to its judgment, that decision may preclude relitigation of that issue in another and later action involving a party in the first case.

The *Allen* Court rejected the Court of Appeals's holding that every person asserting a federal right is entitled to one unencumbered opportunity to litigate that right in a federal district court.

In the case *sub judice* plaintiff brought an action in the Jefferson Circuit Court challenging the decision of the Civil Service Board. He alleged a constitutional deprivation of his right to equal protection. That argument was rejected by the court and on appeal the Court of Appeals of Kentucky affirmed the decision of the circuit court.

Only when a party against whom the earlier decision is asserted did not have a full and fair opportunity to litigate an issue will the court refuse to apply the concept of collateral estoppel.

Title 28 U.S.C. Section 1738, which implements Article IV, Section 1 of the Constitution, requires this Court to give the same full faith and credit to judicial proceedings as they would have in the state court. Section 1983 is not an exception to that concept.

In *Migra v. Warren City School District, Etc.*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), the Court laid to rest the notion that even if state court action was issue preclusive, there was no claim preclusion bar to an action in federal court:

"Petitioner suggests that to give state-court judgments full issue preclusive effect but not claim preclusive effect would enable litigants to bring their state claims in state court and their federal claims in federal court, thereby taking advantage of the relative expertise of both forums. Although such a division may seem attractive from a plaintiff's perspective, it is not the system established by [Section] 1738. That statute embodies the view that it is more important to give full faith and credit to state-court judgments than to ensure separate forums for federal and state claims. This reflects a variety of concerns, including notions of comity, the need to prevent vexatious litigation, and a desire to conserve judicial resources.

In the present litigation, petitioner does not claim that the state court would not have adjudicated her federal claims had she presented them in her original suit in state court. Alternatively, petitioner could have obtained a federal forum for her federal claim by litigating it first in a federal court. Section 1983, however, does not override state preclusion law and guarantee petitioner a right to proceed to judgment in state court on her state claims and then turn to federal court for adjudication of her federal claims. We hold, therefore, that petitioner's state-court judgment in this litigation has the same claim preclusive effect in federal court that the judgment would have in the Ohio state courts." 465 U.S. at 84–85, 104 S.Ct. at 898.

It is crystal clear to this Court that plaintiff has had a full and fair opportunity to

litigate his claims in the state courts. He has done so and principles of comity and federalism dictate that he should be barred from relitigating them here.

CONCLUSION

The Court concludes that on either the limitations issue or the res judicata-collateral estoppel issue, plaintiff's complaint must be dismissed. The Court will therefore not address at length the argument that the regulation is unconstitutionally vague. It should be noted that plaintiff's argument that to withstand a challenge to vagueness the misconduct must have been so hard core that any reasonable person would know that the misconduct would be cause for discipline or discharge hoists him by his own petard. That plaintiff had any notion that purchasing an examination which he knew to be stolen would be condoned strains credulity to the sticking point. We agree with Judge Oldham who found plaintiff's proffered reason for his conduct—that he purchased the examination to keep others from cheating—incredible.

Defendant's motion for summary judgment will be granted. Plaintiff's motion for summary judgment will be denied, and an appropriate order has been entered this 31st day of October, 1985.