Dorothy BYNUM, Sylvester Bynum and Dorothy Bynum as Administrator of the Estate of Bernard Bynum, decedent, Plaintiffs,

v.

CITY OF PITTSBURG, Leonard Castiglione, individually and in his capacity as Chief of Police for the City of Pittsburg, Ray Giacomelli and William O'Malley, individually and in his capacity as District Attorney for the County of Contra Costa, Defendants.

No. C–83–5664–MHP.

United States District Court, N.D. California.

Nov. 12, 1985.

Amended Nov. 27, 1985.

Tito Torres, San Francisco, Cal., for plaintiffs.

James L. Hazard, Sellar, Engleking, Hazard & Snyder, Walnut Creek, Cal., Eliza-

beth B. Hearey, Deputy County Counsel, Martinez, Cal., Jerrold M. Ladar, Stephen W. Sommerhalter, San Francisco, Cal., for defendants.

## AMENDED OPINION

PATEL, District Judge.

This case arises out of the shooting death of Bernard Bynum by Ray Giacomelli, a police officer for the City of Pittsburg. The shooting occurred on January 27, 1982. Decedent's surviving heirs, Dorothy and Sylvester Bynum, filed this action on November 22, 1983 alleging that defendants City of Pittsburg ("Pittsburg"), police officer Ray Giacomelli ("Giacomelli"), police chief Leonard Castiglione ("Castiglione"), and district attorney William O'Malley ("O'Malley") had violated their civil rights by performing acts which caused their son to be shot to death by officer Giacomelli. Dorothy Bynum also sues in her capacity as administrator of the decedent's estate.[1]

Plaintiffs' Second Amended Complaint filed on August 6, 1985 contains five causes of action, all based on 42 U.S.C. § 1983. First, plaintiffs allege that defendant Giacomelli acting under color of state law deprived their son of several constitutionally protected rights, including the right not to be deprived of life without due process of law, the right to be free from excessive force, and the right to be free from battery motivated by racial prejudice. Second, they contend that defendant Castiglione instituted a policy of inadequate police training which caused the death of their son. Third, they claim that defendant Pittsburg encouraged its police department to abuse minorities causing the death of their son. Fourth, they allege that defendants Pittsburg, Castiglione, and O'Malley had a policy of exonerating officers who brutalized or killed minorities and that this policy was a proximate cause of their son's death. Finally, they allege that defendants

Pittsburg and O'Malley caused their son's death by failing to prosecute law enforcement officers who brutalized or killed minorities.

Defendants Pittsburg, Giacomelli, and Castiglione filed a motion to dismiss the Second Amended Complaint on August 22, 1985 on the grounds that plaintiffs' claims are barred by a one year statute of limitations and that no constitutional violation is shown in the pleadings. Castiglione also moves to dismiss the second cause of action against him claiming that respondeat superior is an insufficient basis for imposing liability on him. Finally, Pittsburg asks the court to dismiss it from the fifth cause of action since it contains no allegations of wrongdoing on the part of the City. Defendant O'Malley joined in the motion to dismiss on August 23, 1985. In addition to the grounds asserted by the other defendants, O'Malley claims that the plaintiffs have no standing to bring this action, that he is absolutely immune from prosecution, and that plaintiffs are not entitled to the equitable relief that they seek.

The court has considered all of the papers in support of and in opposition to these motions. For the reasons discussed below, the fifth cause of action is dismissed as to defendant City of Pittsburg and the remainder of defendants' motions to dismiss are denied.

## I. O'Malley's Motion to Dismiss

Defendant O'Malley's motion to dismiss the Second Amended Complaint is based on several arguments which the court heard and rejected on July 23, 1984. On that date, the court denied O'Malley's motion to dismiss plaintiffs' First Amended Complaint based upon prosecutorial immunity, lack of survival and standing, and failure to state a claim cognizable under § 1983. It also refused to strike plaintiffs' prayer for equitable relief.[2] O'Malley's argu-

---

1. For the purposes of this order the court refers to plaintiffs jointly, although certain claims are held only by the administrator.

2. Plaintiffs' Second Amended Complaint does not differ substantively from their First Amended Complaint. The Second Amended Complaint simply adds Dorothy Bynum in her capacity as administrator.

ments here amount to nothing more than a motion for reconsideration. Since he advances no new arguments, the motion is denied.

The only issue raised by O'Malley that the court must consider here is the claim that plaintiffs' action is barred by a one year statute of limitations. This is discussed below since defendants Pittsburg, Giacomelli, Castiglione also raise this claim.

## II. *Pittsburg, Giacomelli, and Castiglione's Motion to Dismiss*

### A. *Statute of Limitations*

■ Defendants Pittsburg, Giacomelli, and Castiglione ask the court to dismiss this action on statute of limitations grounds in light of the Supreme Court's decision in *Wilson v. Garcia*, — U.S. —, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Defendant O'Malley joins in this motion.

In *Wilson*, the Supreme Court held that state statutes of limitations for personal injury should be applied in § 1983 actions. *Id.* at 1949. The shooting of plaintiffs' son occurred on January 27, 1982; they filed suit on November 22, 1983. Defendants argue that *Wilson* should be applied *retroactively* to bar plaintiffs' causes of action under the one year California statute of limitations for personal injury.[3] *See* Cal. Civ.Proc.Code § 340.

Defendants cite several cases from other circuits for the proposition that *Wilson* should be applied retroactively. All of the decisions rely upon the test announced in *Chevron Oil v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), to analyze the retroactivity question. In *Huson*, the Supreme Court held that a decision could be applied nonretroactively if three criteria were met:

First, the decision to be applied nonretroactively must establish a new principle of law, ... by overruling clear past precedent on which litigants may have relied ... Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking at the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." ... Finally, we have weighed the inequity imposed by retroactive application....

*Id.* at 106–07, 92 S.Ct. at 355–56 (citations omitted).

In *Smith v. City of Pittsburgh*, 764 F.2d 188 (3rd Cir.1985), the court used the *Huson* test in making its determination to apply *Wilson* retroactively to the case before it. The court relied heavily on the fact that the Third Circuit did not have a well-established statute of limitations in § 1983 actions prior to *Wilson*. The first and third prongs of the *Huson* test were not met since the "application of the [statute of limitations] law had been erratic and inconsistent, without clear precedent on which plaintiff could reasonably rely in waiting to file suit." *Id.* at 194–95. With respect to the second prong of the Huson test, the court held that "[a]lthough we cannot say that the policies referred to in *Wilson v. Garcia* militate clearly in favor of retroactive application, neither do they militate against such application." *Id.* at 196.

In this circuit, by contrast, the *Huson* test suggests that *Wilson* should not be applied retroactively.

### 1. *Wilson announced new law in the Ninth Circuit.*

Prior to *Wilson*, "the three-year limitations period in section 338(1) [had] long governed suits against state officials

---

**3.** Defendants contend that the Supreme Court itself mandated that *Wilson* be applied retroactively. The Court remanded *Springfield Township School District v. Knoll*, — U.S. —, 105 S.Ct. 2065, 85 L.Ed.2d 275 (1985), for reconsideration in light of *Wilson*. It did not, as defendants suggest, tell the court of appeals to apply *Wilson* retroactively. Moreover, in *Wilson*, the Court seemed to recognize that there might in-

deed be cases in which the decision should not be applied retroactively. — U.S. at —, 105 S.Ct. at 1941–42 n. 10 (the Court cites *Jackson v. City of Bloomfield*, 731 F.2d 652, 655 (10th Cir. 1984) (en banc), a case decided the same day as the circuit opinion in *Wilson* which refuses to apply the new personal injury statute of limitations retroactively).

brought pursuant to section 1983." *Marshall v. Kleppe*, 637 F.2d 1217, 1223 (9th Cir.1980). The state of the law regarding the statute of limitations was well-settled in the Ninth Circuit. *See Wilson*, 105 S.Ct. at 1947 n. 35 (Supreme Court noted that the Ninth Circuit had created uniformity by adopting a uniform characterization of § 1983 actions as claims arising on a statute). Since *Wilson* announced a new principle of law in the Ninth Circuit, the first prong of the *Huson* test is met.

### 2. *Retroactive application of Wilson would not further its purposes*

The Court in *Wilson* was attempting to promote "federal interests in uniformity, certainty, and the minimization of unnecessary litigation." 105 S.Ct. at 1947. Retroactive application would neither retard nor promote these goals. Therefore, the second prong of the *Huson* test is inconclusive. *Jackson v. City of Bloomfield*, 731 F.2d 652, 655 (10th Cir.1984) (en banc) (refusing to apply new statute of limitations retroactively); *see also Smith*, 764 F.2d at 196.

### 3. *Retroactive application of Wilson would be inequitable*

As the court noted in *Smith*, "[w]here a plaintiff could have reasonably waited to file suit under the established prior rule, it would be inequitable to say he had slept on his rights because of a later and unforeseeable Supreme Court decision." 764 F.2d at 196. Prior to *Wilson* the statute of limitations in actions under § 1983 was three years. Since this case has been pending for almost two years based upon plaintiffs' reasonable reliance on a three year statute of limitations, it would be inequitable to apply *Wilson* retroactively.[4] Thus, the third prong of the *Huson* test is met.

Because the *Huson* test is met, *Wilson* should not be applied retroactively in this case.[5] Accordingly, defendants' motions to dismiss on statute of limitations grounds are denied.

### B. *Failure to Allege a Constitutional Violation*

■ Defendants Pittsburg, Giacomelli, and Castiglione have also moved to dismiss the Second Amended Complaint on the grounds that it fails to allege a constitutional violation. They argue that the availability of adequate state postdeprivation remedies bars this court's consideration of plaintiffs' § 1983 claims under the rationale of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

Defendants' argument fails in several respects. First, in *Hudson v. Palmer*, —— U.S. ——, ——, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984), the Supreme Court elaborated on its holding in *Parratt* stating that "postdeprivation remedies do not satisfy due process where a deprivation of property is caused by conduct pursuant to established state procedure, rather than random and unauthorized action." In this case plaintiffs have alleged that defendants acted pursuant to a *policy* of exoneration; plaintiffs do not allege merely commission of a random and unauthorized act which defendants could not have predicted. Therefore, the rationale of *Parratt* is inapplicable.

Moreover, even if the shooting death of plaintiffs' son were a random and unauthorized act, plaintiffs might still have an action under § 1983 despite the availability of a state remedy. In *Haygood v. Younger*, 769 F.2d 1350, 1356–57 (9th Cir.1985) (en banc) (citation omitted), the Ninth Circuit noted that

*Parratt* and *Hudson* did not decide, and we do not reach the question, whether

---

**4.** The court is aware that plaintiffs' former counsel was less than diligent in pursuing this case. However, it was reluctant to penalize plaintiffs for this absent some acquiesence on their part. Plaintiffs obtained new counsel who has been diligent. The equities still balance in plaintiffs' favor.

**5.** Another district court judge in this Circuit has also suggested that retroactive application of *Wilson* is inappropriate in the Ninth Circuit. *See Estate of Cartwright v. City of Concord*, 618 F.Supp. 722 (N.D.Cal.1985).

the availability of some remedial relief in state court might be imposed as a bar to federal relief under § 1983 in the myriad fact situations that might present themselves in other cases against state and local government officials. *Parratt* and *Hudson* dealt with relatively minor infractions of prisoners' interests in their personal property, and did not deal with official assaults, batteries or other invasions of personal liberty.

Finally, to the extent that plaintiffs' Second Amended Complaint alleges violations of their substantive due process rights the procedural rationale of *Parratt* is inapplicable. In *Parratt* the Supreme Court recognized the distinction between procedural and substantive claims when it noted that the case involved only violation of "the Due Process Clause of the Fourteenth Amendment *simpliciter*," in contrast to previous § 1983 cases before the Court involving fourth amendment and eighth amendment claims. 451 U.S. at 536, 101 S.Ct. at 1913. Courts in this circuit have also noted this distinction between substantive and procedural due process. *See Haygood*, at 1354–57 (court applies different analyses to Haygood's eighth amendment and due process claims); *Garcia v. County of Los Angeles*, 588 F.Supp. 700 (C.D.Cal.1984) (*Parratt* analysis does not apply to substantive due process claims). If plaintiffs succeed in proving the allegations contained in their Second Amended Complaint, "defendants' conduct may have been sufficiently outrageous to constitute a violation of substantive due process." *Garcia*, 588 F.Supp. at 707.

The law of this circuit remains unsettled. In *Wakinekona v. Olim*, 664 F.2d 708 (9th Cir.1981), *rev'd on other grounds*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983), the court found a prisoner could assert a protectible liberty interest in certain prison transfer regulations. The prisoner was allowed to assert these under § 1983. However, in another case decided the same year the court applied *Parratt* and held that a prisoner was not deprived of due process where he not only could pursue state tort claims for injuries suffered at the hands of a guard, but had pursued those remedies.

*Rutledge v. Arizona Board of Regents*, 660 F.2d 1345 (9th Cir.1981), *aff'd on other grounds sub nom Kush v. Rutledge*, 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983).

Nevertheless, this circuit has recently made it clear that claims of excessive force may still be brought under § 1983 where they are based on Fourth Amendment grounds. *Robins v. Harum*, 773 F.2d 1004 (9th Cir.1985). Plaintiffs' allegations are grounded on the Fourth as well as the Fourteenth Amendment. The availability of state postdeprivation remedies does not bar Fourth Amendment claims. *Id.* at 1008–09.

For all of the foregoing reasons, defendants' motion to dismiss for failure to state a constitutional violation is denied.

### C. *Respondeat Superior*

■ Defendant Castiglione argues that this court should dismiss plaintiffs' second cause of action against him because respondeat superior is not a basis for imposing § 1983 liability. He cites the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), for this proposition. In *Monell* the Court held that local government entities may be sued under § 1983 only where the alleged deprivation of constitutional rights resulted from the execution or implementation of an official government policy.

The Supreme Court recently elaborated on its decision in *Monell* in *City of Oklahoma v. Tuttle*, — U.S. —, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). In *Tuttle*, the widow of a man shot by a police officer brought a § 1983 action alleging that a policy of inadequate training brought about her husband's death. The trial court allowed the jury in the case to infer a policy of inadequate training from the mere fact that the victim was shot to death. The Supreme Court reversed, holding that "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and

the causal connection between the 'policy' and the constitutional deprivation." 105 S.Ct. at 2436 (footnotes omitted).

In their complaint, plaintiffs allege more than a single incident; they allege an ongoing policy of inadequate training which caused their son's death and involved the injuries and deaths of other minorities. At this stage of the proceedings the allegations are sufficient to defeat a motion to dismiss. Therefore, Castiglione's motion to dismiss the second cause of action is denied.

### D. *No Wrongdoing by City of Pittsburg*

Defendant City of Pittsburg contends that this court should dismiss the fifth cause of action since it contains no allegation of wrongdoing by the City. Plaintiffs conceded this at oral argument. Therefore, the claim is dismissed as to the City of Pittsburg.

### III. *Conclusion*

This court dismisses the fifth cause of action of plaintiffs' Second Amended Complaint as to defendant City of Pittsburg. The motions to dismiss are otherwise denied for the reasons stated herein.

IT IS SO ORDERED.