David BEHM, Victoria Pike, and for
Mia Behm, a minor, Elijah
Behm, Plaintiffs,

v.

LUZERNE COUNTY CHILDREN &
YOUTH POLICY MAKERS, et
al.   Defendants.

Civil Action No. 3:00–CV–1617.

United States District Court,
M.D. Pennsylvania.

Oct. 31, 2001.

David Behm, Pottsville, PA, pro se.

Victoria Pike, Pottsville, PA, pro se.

Elijah Behm, Saint Clair, PA, pro se.

Donald J.P. Sweeney, Philadelphia, PA, for Luzerne County Children & Youth Services, Eugene Caprio, Helen Mericle, Jacqui Maddon, Ellis W. Carle, Peggy A. Peterson, David Gryczko, Anthony Michaels.

Victoria Sellitto Freimuth, Office of Chief Counsel, PA Dept of Corrections, Camp Hill, PA, for PA Dept of Welfare, Pennsylvania Division of Children Youth and Families.

## MEMORANDUM

CAPUTO, District Judge.

Now before the Court is Defendants' motion to dismiss Plaintiffs' amended complaint. (Doc. 14.) Plaintiffs' original complaint was filed on September 11, 2000. (Doc. 1.) Plaintiffs filed an amended complaint on February 15, 2001. (Doc. 8.) The present motion to dismiss was filed by Defendants Luzerne County Child and Youth Services, Helen Mericle, Jacqui Maddon, Ellis W. Carle, Peggy A. Peterson, David Gryczko, and Anthony Michaels on April 23, 2001. Defendants Pennsylvania Department of Welfare (PDW) and Pennsylvania Division of Children, Youth

and Families (PDCYF) filed a separate motion to dismiss on August 10, 2001. (Doc. 18.) I granted Defendants PDW and PDCYF's motion to dismiss on September 27, 2001. (Doc. 20.)

In the present case, Defendants' motion to dismiss on the grounds of statute of limitations, collateral estoppel and *Rooker–Feldman* will be denied. Defendants' motion to dismiss Counts I, II, and V of Plaintiffs' amended complaint, and Plaintiffs' claim of intentional infliction of emotional distress, will be granted. Defendants' motion to dismiss Count IV of the amended complaint, as it pertains to Defendant Maddon, will also be granted. Defendants' motion to dismiss Counts II will be denied, as will Defendants' motion to dismiss Count IV as it pertains to Defendants Mericle and Caprio. In addition, I do not reach Defendants' argument that portions of Plaintiffs' amended complaint should be stricken for scandalous and impertinent material, as Defendants have not filed the appropriate motion under Rule 12(f) of the Federal Rules of Civil Procedure.

## BACKGROUND

Defendants are: the Luzerne County Children and Youth Services (LCCYS); Eugene Caprio, Director of LCCYS; Helen Mericle, Social Service Coordinator at LCCYS; Jackie Maddon, Social Service Coordinator at LCCYS; Ellis W. Carle, Casework Manager at LCCYS; Peggy A. Peterson, Caseworker at LCCYS; David Gryczko, Caseworker at LCCYS; and Anthony Michaels, Caseworker at LCCYS. (Defs.' Brief in Support of their Mot. to Dismiss; Doc. 14 ¶ 7.)

In May 1991 and March 1992, Mia Behm and Plaintiffs Elijah and David Behm ("the children") were found dependent in an uncontested dependency hearing. (Doc. 8 ¶¶ 44–45.) Plaintiffs allege that the children's mother, Plaintiff Pike, was urged to "cooperate" and sign the dependency petitions on both occasions, under threat of losing her children if she did not cooperate. (Doc. 8 ¶¶ 44–46.) In February 1993, Defendants took custody of the children and placed them in foster care after they were discovered in Dekalb County, Georgia with Plaintiff Pike and Robert Schreffler, in violation of a Luzerne County Court of Common Pleas order stating that the children were not to have any contact with Schreffler. (Doc. 8 ¶ 47; Doc. 14, Ex. D.) The incident report from the event states that the children looked "very nervous" and "afraid of" Schreffler. (Pls.' Brief in Opp. to Defs.' Mot. to Dismiss, Doc. 15, Ex. A.) The incident report also states that Plaintiff Pike told authorities that she was in the process of moving from Pennsylvania to Georgia, and that she was not capable of taking care of her children, or providing food and shelter for the children, at that time. (Doc. 14, Ex. D.) Plaintiff Pike remained in Georgia with Schreffler while the children were returned to Pennsylvania. (Doc. 15 at 5.) From the complaint, it is unclear whether the children were immediately placed in foster care, and then returned to family members, or whether they were first placed with family members before being placed into foster care. At some point during the spring of 1993, Plaintiffs David and Elijah Behm were placed with their sister, Lisa Kellerman, and Mia Behm was placed with her grandmother, Monica Bergman. (Doc. 8 ¶¶ 49, 50, 51.)

In March 1993, Defendants informed the children that their mother had abandoned them. (Doc. 8 ¶ 48.) Plaintiffs allege that Defendants published this information and distributed it to the children's sister, Lisa Kellerman, and grandmother, Monica Bergman, and the Luzerne County Children and Youth Services (LCC & Y) case file. *See id.*

On May 10, 1993, Plaintiff David Behm was removed from Kellerman's home and placed in foster care by Defendants. (Doc. 8 ¶ 49.) On March 16, 1994, Plaintiff Elijah Behm was also removed from Kellerman's home and placed in a group home by Defendants. (Doc. 8 ¶ 50.) On May 25, 1994, LCC & Y dropped dependency of Mia Behm, and she continued to live with her grandmother.

From February 1993 until May 1994, Plaintiff Pike maintained contact with Kellerman and Bergman to keep up to date on her children's health and welfare and to arrange visits with her children. (Doc. 8 ¶ 51.) On January 22, 1995 and February 5, 1995, Plaintiff Pike visited Plaintiff Elijah Behm at the group home. (Doc. 8 ¶ 52.) Plaintiff Pike arranged this visit herself, as LCC & Y failed to arrange visits between the plaintiffs. *See id.* On February 14, 1995, Plaintiff Pike received a letter from Defendants stating that she was not to have any further contact with the children until further order of the court. (Doc. 8 ¶ 54.) In a March 1995 Family Service Plan, Defendants again mentioned a court order prohibiting Plaintiff Pike from having any contact with the children. *See id.* Plaintiffs allege that there was no such court order, and that their repeated requests to see this court order were denied. (Doc. 8 ¶¶ 54–55.) On November 4, 1996, Plaintiff Pike sent a letter to Defendant Carle to inquire why, despite court ordered visits, no visits were being scheduled between herself and Mia Behm. (Doc. 8 ¶ 56.)

Between May 10, 1993 and May 1, 1999, Mia Behm and Plaintiffs Elijah and David Behm remained in alternate care without contact with their mother or each other. (Doc. 8 ¶ 57.) Plaintiffs allege that, during this time, Defendants systematically interfered with the Plaintiffs' efforts to contact one another. *See id.* Plaintiffs also allege that, between May 10, 1993 and May 1, 1999, Defendants caused Plaintiff Pike to live in fear through their repeated verbal assaults, threats and other means of intimidation. (Doc. 8 ¶ 58.) Plaintiffs allege that many administrative and judicial reviews of their cases took place from January 5, 1991 without their knowledge or prior notification. (Doc. 8 ¶ 59.)

Plaintiffs allege that, although they informed Defendants Mericle and Caprio of the caseworkers' unlawful conduct, these defendants failed to investigate and exercise control over the caseworkers, instead allowing the caseworkers to repeatedly and systematically violate Plaintiffs' constitutional rights. (Doc. 8 ¶¶ 60–61.)

Plaintiffs allege that they first discovered their injuries in January 1999, when Plaintiff David Behm returned to his mother's home, and Plaintiffs David and Elijah Behm were reunited with Plaintiff Pike and Mia Behm for the first time in 6 years. (Doc. 8 ¶ 62.)

## STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting all factual allegations in the complaint as true and "drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations in the complaint." *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir.1998).

In deciding a motion to dismiss, the court should consider the allegations in the complaint, exhibits attached to the complaint and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (1993). The court may also consider "undisputedly authentic" documents where

the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss. *Id.* The court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir.1998), nor credit a complaint's "bald assertions" or "legal conclusions," *Morse v. Lower Merion School District,* 132 F.3d 902, 906 (3d Cir.1997).

When considering a Rule 12(b)(6) motion, the court's role is limited to determining whether the plaintiff is entitled to offer evidence in support of the claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The court does not consider whether the plaintiff will ultimately prevail. *See id.* In order to survive a motion to dismiss, the plaintiff must set forth information from which each element of a claim may be inferred. *See Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). The defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted. *See Gould Electronics v. United States,* 220 F.3d 169, 178 (3d Cir.2000).

The Third Circuit has emphasized a policy of liberally interpreting *pro se* complaints, so Plaintiffs' amended complaint should be held to less stringent standards than formal pleadings drafted by lawyers. *See Weaver v. Wilcox,* 650 F.2d 22, 26 (3d Cir.1981); *Henderson v. Fisher,* 631 F.2d 1115, 1117 (3d Cir.1980); *see also Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam).

## DISCUSSION

### A. *Statute of Limitations*

As 42 U.S.C. § 1983 does not contain a specific statute of limitations period, courts apply the statute of limitations period applicable to personal injury actions in the state in which they sit. *See Wilson v.* *Garcia,* 471 U.S. 261, 276–78, 105 S.Ct. 1938, 1947–48, 85 L.Ed.2d 254 (1985); *287 Corporate Ctr. Assocs. v. Township of Bridgewater,* 101 F.3d 320, 323 (3d Cir. 1996). Pennsylvania statute 42 Pa. Cons. Stat. Ann. § 5524(2) (West Supp.1997) imposes a two-year limitations period on personal injury, and thus, Section 1983 actions. *See Fitzgerald v. Larson,* 769 F.2d 160, 162 (3d Cir.1985); *Smith v. City of Pittsburgh,* 764 F.2d 188, 194 (3d Cir. 1985). As Section 1985 also sounds in tort, a two year statute of limitations also applies to actions brought under Section 1985. *See Bougher v. University of Pittsburgh,* 882 F.2d 74, 79 (3d Cir.1989).

The statute of limitations in a civil rights action begins to accrue when the plaintiff knows or should have known of the injury upon which his action is based. *See Sandutch v. Muroski,* 684 F.2d 252, 254 (3d Cir.1982); *de Botton v. Marple Township,* 689 F.Supp. 477, 480 (E.D.Pa.1988). Therefore, the plaintiff must allege that an unlawful act which is actionable under Sections 1983 or 1985 occurred in the two-year period prior to the filing of the complaint. *See Bougher,* 882 F.2d at 79.

In the present case, Plaintiffs filed the original complaint on September 11, 2000. (Doc. 1.) Thus, Plaintiffs must allege that an unlawful act actionable under Sections 1983 or 1985 occurred between September 11, 1998 and September 11, 2000. The primary incidents alleged by Plaintiff occurred in the early to mid–1990's, several years prior to 1998. However, Plaintiffs allege that Defendants' unlawful acts continued through 1999. (Doc. 8 ¶¶ 57–59.) In addition, Plaintiffs specifically allege that they did not "discover their injuries and the cause of these injuries" until they were reunited in January 1999. (Doc. 8 ¶ 62.) Defendants argue that Plaintiffs knew or should have known of their alleged injuries prior to September 1998. Defendants note

that, in December 1996, January 1997 and February 1997 Plaintiff Pike filed complaints against Defendant Caprio and the executive officers of Luzerne County Children and Youth in the Court of Common Pleas for Luzerne County, alleging negligence for "undue estrangement and decomposition of the Plaintiffs' family unit." (Doc. 14 at 10; Ex. F, G, H.) However, these complaints did not allege Due Process Clause violations. In addition, Plaintiffs have alleged unlawful actions within the statute of limitations period. Defendants' motion to dismiss Plaintiffs' amended complaint on statute of limitations grounds will be denied.

### B. *Collateral Estoppel*

■ The doctrine of collateral estoppel, or issue preclusion, bars the relitigation of issues that have already been decided in a previous action. *See Hawksbill Sea Turtle v. Federal Emergency Mgt. Agency,* 126 F.3d 461, 474 (3d Cir.1997) (citing *Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)). Four factors must be present in order to invoke the doctrine of collateral estoppel: (1) the identical issue was previously litigated; (2) the identical issue was actually decided, in a final decision on the merits; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was adequately represented during the previous action. *See Hawksbill Sea Turtle,* 126 F.3d at 475 (citing *Raytech Corp. v. White,* 54 F.3d 187, 190 (3d Cir.1995)). "[W]hen significant new facts arise out of a continuing course of conduct, the issues in a successive suit may fail to constitute the same 'issue' as to merit preclusive effect." *Hawksbill Sea Turtle,* 126 F.3d at 477.

Defendants argue that Plaintiff Pike is collaterally estopped as she previously litigated the same issues in the Court of Common Pleas for Luzerne County. The amended complaint in this prior case, filed February of 1997, alleges that the defendants' negligence "caused undue estrangement and decomposition of the Plaintiffs' family unit, resulting in severe mental and emotional anguish...." (Doc. 14 Ex. H.) Nowhere does the complaint allege violations of Section 1983, Section 1985, the Due Process Clause, or the First Amendment, as alleged in the present case. While Plaintiffs presently allege intentional infliction of emotional distress, this allegation is based, at least in part, on events that occurred through May of 1999, after the prior litigation had ended. Defendants' motion to dismiss Plaintiffs' amended complaint on the basis of collateral estoppel will be denied.

### C. *Rooker–Feldman Doctrine*

■ Under the *Rooker–Feldman* doctrine, "federal district courts lack subject matter jurisdiction to review final adjudications of a state's highest court or to evaluate constitutional claims that are inextricably intertwined with the state court's [decision] in a hearing." ' *FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 840 (3d Cir.1996) (quoting *Blake v. Papadakos,* 953 F.2d 68, 71 (3d Cir.1992)). When a plaintiff seeks to litigate a claim in federal court, the existence of a state court judgment will only bar the federal proceeding under *Rooker–Feldman* where, in entertaining the plaintiff's claim, the federal court would be required to determine that the state court judgment was erroneously entered, or to take action that would render the state court judgment ineffectual. *FOCUS,* 75 F.3d at 840 (citing *Marks v. Stinson,* 19 F.3d 873, 876 n. 11 (3d Cir.1994)). "*Rooker–Feldman* does not bar individual constitutional claims by persons not parties to earlier state court litigation...." *FOCUS,* 75 F.3d at 840 (quoting *Valenti v. Mitchell,* 962 F.2d 288, 298 (3d Cir.1992)).

Defendants argue that Plaintiffs' claim is barred under the *Rooker–Feldman* doctrine. The Court of Common Pleas for Luzerne County dismissed Plaintiff Pike's prior complaint on April 24, 1997. (Doc. 14, Ex. I.) As previously noted, Plaintiff Pike's state court complaint did not allege violations of Sections 1983 or 1985, the Due Process Clause, or the First Amendment. While Plaintiff's amended state court complaint included allegations that the defendants negligently failed to operate the Luzerne County Children and Youth Services agency "in conformity with the applicable Federal, State and local statutes, ordinances and regulations," Plaintiff did not allege that the defendants in that case had violated her rights under the Due Process Clause or the First Amendment. (Doc. 14, Ex. H ¶ 4.) In dismissing Plaintiff's complaint, the Court of Common Pleas for Luzerne County noted only that Plaintiff failed to properly allege that the defendants in that case breached their duty to operate the agency in conformity with federal, state and local law. (Doc. 14, Ex. I at 2.) In entertaining Plaintiffs' current constitutional claims, the Court will not be required to find that the Court of Common Pleas erroneously dismissed Plaintiff's negligence action, or to render the dismissal of Plaintiff's state court negligence action ineffectual. *See Ernst v. Child and Youth Services of Chester County*, 108 F.3d 486, 492 (3d Cir. 1997), *cert denied* 522 U.S. 850, 118 S.Ct. 139, 139 L.Ed.2d 87 (1997). In addition, I note that, as Plaintiffs David Behm and Elijah Behm were not parties to the prior lawsuit, their claim cannot be barred under *Rooker–Feldman*. Defendants' motion to dismiss Plaintiffs' amended complaint un-

der the *Rooker–Feldman* doctrine will be denied.

### D. *Failure to State A Claim Upon Which Relief May Be Granted*

Defendants argue that Plaintiffs have failed to state a claim upon which relief may be granted.[1] In Count I of their amended complaint, Plaintiffs allege that Defendants violated 42 U.S.C. § 1983 ("Section 1983") and 42 U.S.C. § 1985 ("Section 1985") by limiting Plaintiff Pike's contact with her children in violation of the 14th Amendment Due Process Clause and the First Amendment right to family association. (Doc. 8 ¶ 140.) In Count II, Plaintiffs allege that Defendants violated Section 1983 and Section 1985 by informing Plaintiffs David and Elijah Behm that their mother had abandoned them, creating "issues of abandonment" for David and Elijah and denying them their First and Fourteenth Amendment right to be protected from harm while in state custody. (Doc. 8 ¶ 147.) In Count III, Plaintiffs allege that Defendants violated Section 1983 and Section 1985 by failing to notify Plaintiffs of relevant hearings and case reviews, in violation of their rights under the Fourteenth Amendment Due Process Clause. (Doc. 8 ¶ 151.) In Count IV, Plaintiffs allege that Defendants Mericle, Maddon and Caprio violated Section 1983 by failing to provide adequate supervision of LCC & Y employees, in violation of "Plaintiffs' well established constitutional rights." (Doc. 8 ¶¶ 152–56.) In Count V, Plaintiffs allege that Defendants violated Section 1983 by routinely restricting visits and communication between family members, and threatening Plaintiff Pike into

---

1. Defendants also argue that they have absolute or qualified immunity in this case. The Third Circuit has held that, before determining whether an immunity defense is available, it is proper to determine whether there has been a constitutional violation. *See Miller v.*

*City of Philadelphia*, 174 F.3d 368, 374 (3d Cir.1999.) Therefore, I will determine whether Plaintiffs have stated a claim that Defendants violated their constitutional rights before determining whether an immunity defense is available.

surrendering custody of her children, in violation of Plaintiffs' constitutional rights. (Doc. 8 ¶¶ 157–161.) In a pendant state claim, Plaintiffs allege that Defendants Carle, Peterson, Grysco, Michaels and Mericle's extreme and outrageous conduct caused Plaintiffs extreme emotional distress. (Doc. 8 ¶¶ 162–165.)

**1. Section 1983**

Plaintiffs allege that Defendants violated 42 U.S.C. § 1983. Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom or usage ... subjects, or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured ....

42 U.S.C. § 1983 (2000). Two elements must be present in order to state a § 1983 claim: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct must have deprived the plaintiff of rights, privileges and immunities secured by the Constitution or laws of the United States. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 923 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d. Cir.1993). At this stage of the pleadings, it is implicit in plaintiff's allegations that Defendants were acting under color of state law. I will therefore address the alleged deprivation of Plaintiffs' rights, liberties and immunities, under the second prong of the test.

**a. Fourteenth Amendment Due Process Clause**

The Fourteenth Amendment Due Process Clause forbids the states from "depriving any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. Parents have a pro-tected liberty interest in "the custody, care and management of their children." *Miller v. City of Philadelphia*, 174 F.3d 368, 373 (3d Cir.1999) (quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394–95, 71 L.Ed.2d 599 (1982)). The Fourteenth Amendment Due Process Clause prohibits government interference with family relationships unless the government adheres to the requirements of procedural and substantive due process. *See Croft v. Westmoreland County Children & Youth Services*, 103 F.3d 1123, 1125 (3d Cir.1997).

**1. Procedural Due Process**

■ "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Miller*, 174 F.3d at 373 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976)). In determining whether a plaintiff's procedural due process have been violated, the court must weigh: (1) the private interest affected by the government action; (2) "'the risk of an erroneous deprivation'" of the private interest through the procedures used by the government, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the government function at issue and the fiscal and administrative burdens that additional or substitute procedural safeguards would require. *Miller*, 174 F.3d at 373 (quoting *Mathews*, 424 U.S. at 333, 96 S.Ct. 893).

In the present case, the private interest is natural parents' "fundamental liberty interest in the care, custody and management of their children." *Miller*, 174 F.3d at 373 (quoting *Santosky*, 455 U.S. at 753, 102 S.Ct. 1388). This interest must be balanced against "the state's interest in

protecting children suspected of being abused." *Miller*, 174 F.3d at 373.

In Count III of their complaint, Plaintiffs allege that Defendants failed to notify them of relevant hearings and reviews. While the parties may have not always have a right to notice before an emergency hearing, they do, at minimum, have a right to a post-deprivation hearing. *See Miller*, 174 F.3d at 373. In addition, where a hearing is not of an emergency nature, the additional procedural costs of giving the parties notice of a hearing would appear to be minimal. I find that, in Count III, Plaintiffs have stated a claim that Defendants violated their procedural due process rights.

### 2. Substantive Due Process

■ In determining whether a plaintiff's substantive due process rights have been violated, the court must balance the parent's liberty interest with the competing government interest in protecting children from abusive parents. *See Croft*, 103 F.3d at 1125. "[D]isruption or disintegration of family life" as a result of the agency or agency worker's action to protect a child from alleged abuse "does not, in and of itself, constitute a constitutional deprivation." *Id.* at 1125–26. Allegations that the agency or agency worker was negligent, or lacked objectively reasonable grounds for a decision, also fail to rise to the level of a substantive due process violation. *Miller*, 174 F.3d at 376. Instead, the plaintiff must show that the agency or agency worker's action "shocks the conscience." *See id.* at 375.

In Count I of their amended complaint, Plaintiffs allege that Defendants violated their Due Process Clause rights by placing Mia Behm and Plaintiffs David and Elijah Behm in foster care after the children were found in Georgia, with Plaintiff Pike. Plaintiff Pike and the children were in the presence of Robert Schreffler, in violation

of a court order stating that Schreffler was not to have contact with the children, and the children appeared nervous and afraid of Schreffler. Plaintiff Pike also told the authorities that she needed temporary help taking care of her sons, Plaintiffs David and Elijah Behm. I find that Defendants' action in removing the children from these circumstances and returning them to Pennsylvania, where it appears that the children were placed with relatives before being placed in foster care, does not "shock the conscience." Defendants' motion to dismiss Count I of Plaintiffs' Fourteenth Amendment claim under Section 1983 will be granted.

■ In Count II of their amended complaint, Plaintiffs allege that Defendants informed Plaintiffs David and Elijah Behm that their mother had abandoned them, denying Plaintiffs David and Elijah Behm of their Fourteenth Amendment right to be protected from harm while in state custody by causing "abandonment issues" for both children. The Third Circuit has recognized that, "when a state places a child in state-regulated foster care, the state has entered into a special relationship with that child which imposes upon it certain affirmative duties." *Nicini v. Morra*, 212 F.3d 798, 808 (3d Cir.2000). The state's failure to perform these affirmative duties "under sufficiently culpable circumstances" may give rise to liability under Section 1983. *See id.* Again, the plaintiff must show that the agency or agency worker's action "shocks the conscience." *See id.* at 810. "Mere negligence is never sufficient for substantive due process liability." *Id.* In the present case, Plaintiffs allege that, on or before March 1, 1993, Defendants informed Plaintiffs David and Elijah Behm that Plaintiff Pike had abandoned them. (Doc. 8 ¶ 48.) Construing the Plaintiffs' complaint liberally, I find that informing young children

that their mother had abandoned them could "shock the conscience." In Count II, Plaintiffs have stated a claim for a Fourteenth Amendment violation.

█ Count V of Plaintiffs' amended complaint alleges that Defendants violated Plaintiffs' constitutional rights by routinely restricting visits and communications between family members, and threatening Plaintiff Pike into surrendering custody of her children. However, as Plaintiffs did not allege that Defendants acted maliciously in restricting visits and communication between family members, Plaintiffs have not alleged a substantive due process violation. *See Fanning v. Montgomery County Children & Youth Services*, 702 F.Supp. 1184, 1186, 1190–91 (E.D.Pa.1988). In addition, Plaintiffs' allegation that Defendants "urged [Plaintiff Pike] to cooperate and sign the dependency petition[s]" does not shock the conscience. (Doc. 8 ¶¶ 44–45.) Defendants' motion to dismiss Count V of Plaintiffs' Fourteenth Amendment claim under Section 1983 will be granted.

### b. First Amendment

█ First Amendment freedom of association includes the right to intimate association. *See Roberts v. United States Jaycees*, 468 U.S. 609, 615, 104 S.Ct. 3244, 3248, 82 L.Ed.2d 462 (1984). The Third Circuit has recognized that "[f]amily relationships are the paradigmatic form of protected intimate associations, as they 'by their nature involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences and beliefs but also distinctively personal aspects of one's life." ' *Pi Lambda Phi Fraternity, Inc. v. University of Pittsburgh*, 229 F.3d 435, 441–42 (quoting *Roberts*, 468 U.S. at 619–20, 104 S.Ct. 3244).

In *Roberts*, the United States Supreme Court noted that the United States Constitution imposes greater constraints on state power to regulate rights of intimate association than it does on state power to regulate a union or large organization's expressive association rights. *Roberts*, 468 U.S. at 620, 104 S.Ct. 3244. While the right to intimate association is not absolutely protected from state regulation, state regulation of intimate association is subject to strict scrutiny. *See Louisiana Debating & Literary Ass'n v. City of New Orleans*, 42 F.3d 1483, 1498 (5th Cir.1995), *cert. denied* 515 U.S. 1145, 115 S.Ct. 2583, 132 L.Ed.2d 832 (1995). The defendant must show that: (1) the state action serves a compelling state interest which (2) cannot be achieved through "means significantly less restrictive of one's associational freedom." *See id.* As previously noted, Defendants have a compelling state interest in protecting children. *See Croft*, 103 F.3d at 1125.

In Count I of their amended complaint, Plaintiffs allege that Defendants violated their First Amendment rights by placing Mia Behm and Plaintiffs David and Elijah Behm in foster care. Plaintiffs' right to intimate association is clearly implicated here. Defendants certainly have a compelling interest here, but it is not clear that the state's interest could not be achieved through less restrictive means. I find that Plaintiffs have stated a claim under the First Amendment in Count I of the amended complaint.

█ In Count II, Plaintiffs allege that Defendants violated their right to intimate association by informing Plaintiffs David and Elijah Behm that their mother, Plaintiff Pike, had abandoned them. Again, Plaintiffs' right to intimate association is implicated, and although Defendants have a compelling interest here, it is not clear that this interest could not have been carried out by less restrictive means. Plaintiffs have stated a claim under the First Amendment in Count II of the amended complaint.

In Count V, Plaintiffs allege that Defendants violated their right to intimate association by routinely restricting—or altogether forbidding—visits among family members, and threatening Plaintiff Pike into surrendering custody of her children. Plaintiffs' right to intimate association is clearly implicated here. Again, Defendants have a compelling interest here, but it is not clear that the state interest cannot be achieved through less restrictive means. Thus, in Count V, Plaintiffs have stated a claim that Defendants violated their First Amendment rights.

### c. Supervisory Liability under Section 1983

Count IV of Plaintiffs' amended complaint alleges that Defendants Mericle, Maddon and Caprio failed to provide adequate supervision of LCC & Y employees. There is no respondent superior liability under Section 1983. *See Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 691–92, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, in order to show that an individual defendant failed to train or supervise municipal employees, the plaintiff must allege that the defendant acted with "deliberate indifference" to the rights of persons with whom those employees will come into contact. *See Carter v. City of Philadelphia*, 181 F.3d 339, 356–57 (3d Cir.1999). Deliberate indifference may be established "where the harm occurred on numerous previous occasions and officials failed to respond properly, or where the risk of harm is great and obvious." *See Carter*, 181 F.3d at 357 (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir.1989)). Specifically, plaintiffs must establish that: (1) the defendant knew that employees would confront a particular situation; (2) the situation involves a difficult choice or a history of employee mishandling; and (3) the wrong choice by an employee will fre-

quently cause a deprivation of constitutional rights. *See Carter*, 181 F.3d at 357.

Plaintiffs allege that they informed Defendants Mericle and Caprio that the LCC & Y caseworkers were acting unlawfully, but that the Defendants failed to investigate or reprimand their subordinates. Liberally construing the Plaintiffs' pro se complaint, Plaintiffs have alleged that Defendants Mericle and Caprio had knowledge of LCC & Y employees' alleged constitutional law violations, were aware that the employees had been mishandling the situation, and that the employees' errors were resulting in a deprivation of Plaintiffs' constitutional rights. Thus, I find that Plaintiffs have stated a claim that Defendants Mericle and Caprio violated their rights under Section 1983. Plaintiffs have not alleged any specific facts regarding Defendant Maddon. Thus, Defendant Maddon presumably did not have the requisite knowledge of the situation, and Defendants' motion to dismiss Count IV claim regarding Defendant Maddon will be granted.

### d. Absolute and Qualified Immunity

Plaintiffs have stated claims that Defendants violated their procedural due process rights (Count III), substantive due process rights (Count II) and their First Amendment right to intimate association (Count I, II, V). Plaintiffs have also stated claims that Defendants Mericle and Caprio have supervisory liability under Section 1983 (Count IV). Defendants argue that they have absolute and qualified immunity from Plaintiffs' claims.

The Third Circuit has held that child caseworkers "are entitled to absolute immunity for their actions in petitioning and in formulating and making recommendations to the state court because those actions are analogous to functions performed by state prosecutors, who were immune from suit at common law." *See Ernst*, 108

F.3d at 486. In the present case, none of Plaintiffs' surviving claims are based on role in petitioning, formulating and making recommendations to the state court, so absolute immunity does not apply.

Government officials performing discretionary functions are entitled to qualified immunity in two circumstances. First, qualified immunity shields officials from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne,* 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Second, even when a violation of a constitutional right has been clearly established, an official may be entitled to qualified immunity where "a reasonable officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession" at the time of the conduct in question. *Sharrar v. Felsing,* 128 F.3d 810, 826 (3d Cir.1997) (citing *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam)).

In the present case, Defendants have qualified immunity from Plaintiffs' First Amendment intimate association claims. While the Supreme Court recognized constitutional protection of the right to "intimate association" in its 1984 *Roberts* opinion, it does not appear that any courts, in the Third Circuit or elsewhere, have found a violation of family members' right to intimate association under the First Amendment outside of the context of employment retaliation and wrongful death cases. Thus, Defendants' conduct did not violate a clearly established constitutional right of which a reasonable person would have known. Defendants' motion to dismiss Plaintiffs' First Amendment claims will be granted.

■ The Third Circuit did not recognize that state agencies enter a special relationship with children in foster care, and may be liable under Section 1983 if they fail to meet certain affirmative duties arising out of this relationship, until 2000. As the alleged conduct in Count II occurred before 2000, Defendants did not violate a clearly established constitutional right of which a reasonable person would have known. Defendants' motion to dismiss Count II of Plaintiff's Fourteenth Amendment claim will be granted.

■ Defendants do not have qualified immunity from Count III of Plaintiffs' Fourteenth Amendment claim. The right to notice of pending hearings, or a post-deprivation hearing, was clearly established at the time of Defendants' alleged actions. Defendants' motion to dismiss Count III will be denied. By the same reasoning, Defendants Mericle and Caprio's motion to dismiss Count IV will be denied.

### 2. Section 1985

■ In stating a claim for conspiracy under Section 1985, "plaintiffs may not make '[b]are conclusory allegations of "conspiracy" or "concerted action,"' but are required to 'expressly allege an agreement or make averments of communication, consultation, cooperation or command from which such agreement can be inferred.'" *Sayles v. Commonwealth of Pennsylvania Dept. of Public Welfare, County of Monroe,* 24 F.Supp.2d 393, 399 (M.D.Pa.1997) (Nealon, J.) (citing *Flanagan v. Shively,* 783 F.Supp. 922, 928 (M.D.Pa.1992) aff'd. 980 F.2d 722 (3d. Cir. 1992), *cert. denied* 510 U.S. 829, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993)). Such averments must include "allegations of the broad objectives [of the conspiracy and] the role each defendant allegedly played in carrying out those objectives." *Sayles,* 24 F.Supp.2d at 399 (citing *Flanagan,* 783

F.Supp. at 928). As in *Sayles*, Plaintiffs "have barely provided a broad allegation of conspiracy," and have not provided any factual support showing the role of each defendant in the alleged conspiracy. *Sayles*, 24 F.Supp.2d at 399. Defendants' motion to dismiss Plaintiffs' Section 1985 claims will be granted.

### 3. Intentional Infliction of Emotional Distress

There is some controversy over whether Pennsylvania jurisprudence recognizes the tort of intentional infliction of emotional distress. *See Hart v. O'Malley*, 436 Pa.Super. 151, 174, 647 A.2d 542 (1994), *aff'd* 544 Pa. 315, 676 A.2d 222 (1996). However, the Third Circuit has recognized the tort of intentional infliction of emotional distress where: (1) the conduct is extreme and outrageous; (2) the conduct is intentional or reckless; (3) the conduct causes emotional distress; and (4) the distress is severe. *See Williams v. Guzzardi*, 875 F.2d 46, 52 (3d Cir.1989). In addition, the plaintiff must allege a physical injury. *See Hart*, 436 Pa.Super. at 175, 647 A.2d 542. *See also Morrison v. Williams*, No. Civ.A–98–2408, 1998 WL 717423 at * 2 (E.D.Pa.1998) (noting that "recent pronouncements of the [Pennsylvania] Superior Court make it clear that where the plaintiff has asserted the tort of intentional infliction of emotional distress, the plaintiff must allege a physical injury"). In the present case, Plaintiffs have not alleged any physical injuries. Defendants' motion to dismiss Plaintiffs' claim for intentional infliction of emotional distress will be granted.

### 4. Defendants' Argument that Portions of Plaintiffs' Amended Complaint Should be Struck Due to Scandalous and Impertinent Material

In their brief in support of their motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants argue that portions of Plaintiffs' amended complaint should be struck due to scandalous and impertinent material. (Doc. 14 at 15–16.) Motions to strike must be brought under Rule 12(f) of the Federal Rules of Civil Procedure. *See e.g. DiPietro v. Jefferson Bank*, CIV.A.91–7963, 1993 WL 101356 (E.D.Pa.1993). Defendants have not filed a Rule 12(f) motion. Therefore, I will not rule on Defendants' argument that portion of Plaintiffs' amended complaint should be stricken.

### CONCLUSION

Defendants' motions to dismiss Plaintiffs' amended complaint on the basis of statute of limitations, collateral estoppel, and *Rooker–Feldman* doctrine will be denied. Defendants' motion to dismiss Plaintiffs' amended complaint for failure to state a claim upon which relief can be granted will be granted regarding Counts I, II, and V. Defendants' motion to dismiss will also be granted regarding Plaintiffs' claim for intentional infliction of emotional distress, and Count IV of the amended complaint in regards to Defendant Maddon. Defendants' motion to dismiss Count III, and Count IV as it pertains to Defendants Mericle and Caprio, will be denied.

An appropriate order will follow.

### ORDER

And now, this ____ of October, 2001, it is **ORDERED** that Defendants' motion to dismiss will be **GRANTED** in part and **DENIED** in part:

1) Defendants' motion to dismiss Plaintiffs' amended complaint due to statute of limitations, collateral estoppel and *Rooker–Feldman* will be **DENIED.**

2) Defendant's motion to dismiss Counts I, II, and V of Plaintiffs' amended complaint, as well as Plaintiffs' claim for

intentional infliction of emotional distress, will be **GRANTED.**

3) Defendants' motion to dismiss Count IV of Plaintiffs' amended complaint in regards to Defendant Maddon will be **GRANTED.**

4) Defendants' motion to dismiss Count III of Plaintiffs' amended complaint will be **DENIED.**

5) Defendants' motion to dismiss Count IV of Plaintiffs' amended complaint in regards to Defendants Mericle and Caprio will be **DENIED.**