

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-19-2004

# Lindquist v. Buckingham Twp

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2431

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Lindquist v. Buckingham Twp" (2004). *2004 Decisions.* Paper 491.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/491

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 03-2431 and 03-2971

———————

CORA F. LINDQUIST, INDIVIDUALLY
AND AS EXECUTRIX OF THE ESTATE
OF JAMES O. LINDQUIST

v.

BUCKINGHAM TOWNSHIP;
BOARD OF SUPERVISORS OF BUCKINGHAM TOWNSHIP;
ERNEST KNIGHT II; LYNN BUSH,
EXECUTRIX OF THE ESTATE OF
GEORGE M. BUSH, ESQ.

Cora F. Lindquist,

Appellant in 03-2431

Buckingham Township;
Board of Supervisors of
Buckingham Township,

Appellants in 03-2971

———————

Appeals from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 00-cv-01301)
District Judge: Honorable Harvey Bartle, III

———————

Case No. 03-2431 Argued
Case No. 03-2971 Submitted Under Third Circuit LAR 34.1(a)
February 23, 2004

Before: RENDELL, BARRY and ROSENN, Circuit Judges.

(Filed: July 19, 2004)

Barbara Anisko   [ARGUED]
Daniel R. Utain
Kaplin, Stewart, Meloff, Reiter & Stein
350 Sentry Parkway
P.O. Box 3037, Building 640
Blue Bell, PA  19422
  *Counsel for Cora L. Lindquist; Appellant in 03-2431 and Appellee in 03-2971*

Harry G. Mahoney     [ARGUED]
Michael L. Barbiero
Deasey, Mahoney & Bender
1800 John F. Kennedy Boulevard
Suite 1300
Philadelphia, PA  19103-2978
  *Counsel for Buckingham Township and Board of Supervisors of Buckingham Township, Appellees in 03-2431 and Appellants in 03-2971*

OPINION OF THE COURT

RENDELL, Circuit Judge.

Cora F. Lindquist, individually and as executrix of the estate of James O. Lindquist, appeals the District Court's order granting judgment in favor of Buckingham Township and the Board of Supervisors of Buckingham Township on the Lindquists' civil rights action under 42 U.S.C. § 1983.  This case presented, at both the district court level and on appeal before us, a heavily fact-laden saga of the attempted development of land by plaintiffs, seemingly thwarted at every turn by defendants.  The plaintiffs' forty-five page complaint leveled allegations of bad faith and conspiracy against defendants

based on their conduct. The District Court held a six-day non-jury trial, hearing first hand both sides of the story. Before the District Court's twenty-one page opinion issued, we made clear in United Artists Theatre Circuit, Inc v. Township of Warrington, 316 F.3d 392 (3d Cir. 2003), that the standard applicable to substantive due process claims involving executive action in land-use disputes is the "shocks the conscience" standard. The District Court held that "there [was] nothing in the facts . . . to prove that the defendants' conduct was so egregious as to be 'conscience shocking.'" We can find nothing in the record that would cause us to find error in the District Court's reasoning or ruling. Our dissenting colleague paints a picture of dastardly deeds, and, while we might credit such a portrayal if the trial court had perceived in the extensive recounting of the saga the reprehensible animus, attitude and scheming upon which the dissent relies, that is not the case. Moreover, the objective facts, as revealed in the hefty 5,559-page appendix before us, do not necessarily take us in the direction the dissent suggests, causing us to find no error. Clearly, we and the trial judge just view the record differently from our dissenting colleague. We see no clear-cut constitutional violation and will therefore affirm.

I.

The Lindquist farm, located between York Road and Upper Mountain Road in Buckingham, Pennsylvania, consists of a 100-acre parcel owned by James O. Lindquist and Cora F. Lindquist, and a 150-acre parcel owned by James O. Lindquist and his three

3

children.[1]  Beginning in early 1994, the Lindquists sought to develop the property as a cluster subdivision.  Throughout 1994 and 1995, they and their representatives worked with the Township, its Board of Supervisors, its Planning Commission and its consultant to facilitate the proposed development of the property.

Based on these discussions, the Lindquists prepared a set of preliminary plans. Development was to occur in two stages: Phase I, consisting of 111 single-family lots on the front parcel, and Phase II, consisting of 110 single-family lots on the back parcel.  On March 29, 1996, the Lindquists submitted an application for preliminary subdivision approval of Phase I ("Original Phase I Plan").

The Township's consultants evaluated the Original Phase I Plan for compliance with the Township's Subdivision and Land Development Ordinance ("SALDO") and the Zoning Ordinance.[2]  It was understood that waivers from certain SALDO requirements would be necessary before the plan would be approved, and there appeared to be no objection to these waivers at a May 1, 1996 meeting of the Planning Commission. However, later that month, one consultant issued a review letter concerning the plan's proposed storm water management facilities that imposed upon plaintiffs what they

---

[1]James O. Lindquist died while this case was before the District Court.  Cora F. Lindquist was substituted as executrix of his estate.

[2]Under SALDO, a party seeking subdivision and land development approval must first file an application and plans for preliminary approval by the Board.  In addition, the party must also submit an application for final plan approval.  The Board is the only Township entity with the authority to grant approvals and denials of these plans.

believed to be "onerous" and unwarranted requirements with respect to water run-off.

The Lindquists made a formal request for SALDO waivers to the Board on August 9, 1996. The Board took no action on the waiver request, but recommended that the Lindquists meet further with the Township staff to settle the waiver and other issues. The Lindquists met several times with the Township staff, but the parties were unable to reach a compromise that would be accepted by the Board. Finally, the Lindquists went back to the Board for clarification, submitting two proposed plans, including the Original Phase I Plan and a "by-right" alternate plan that met all SALDO requirements.[3] In response, the Board: (1) directed the Lindquists to proceed with the Original Phase I Plan; (2) consented to grant the SALDO waivers necessary to develop the property under the Phase I Plan; (3) determined that the Plan would be processed under the August 24, 1994 Zoning ordinance, as amended December 13, 1995; and (4) required the Lindquists to work with the Township to develop a wastewater system that would integrate the development with the regional sewage system.

In late 1996 and early 1997, the Lindquists and the Township's consultants worked on the wastewater issue. Meanwhile, the Board enacted an amendment to SALDO that prohibited cul-de-sac streets within subdivisions and an amendment to the Zoning

---

[3]The zoning ordinance permitted the cluster subdivision of a property as a "by-right" use. Thus, the Board would have been required to accept this alternate plan if formally submitted. However, the alternate plan would have subdivided and developed a portion of the property that the Township wanted to preserve.

5

Ordinance which eliminated cluster subdivisions as a "by-right" use.

In early June, the Township informed the Lindquists that the Original Phase I Plan would be on the Board's agenda at its June 25, 1997 meeting. The Lindquists informed the Township that they intended to submit a revised Phase I plan within the next few weeks, and proposed that the ninety-day statutory review period for the Original Phase I Plan be extended, as had been done several times throughout the process. The Board did not accept this proposal, and rejected the application for preliminary approval of the plan ("the First Denial Resolution"). As the result of this denial, any new proposals submitted by the Lindquists would be subject to the zoning amendments enacted in early 1997.

On September 3, 1997, the Lindquists commenced legal proceedings against the Board in the Court of Common Pleas of Bucks County. These actions were resolved by a stipulation of settlement signed by the parties on November 12, 1997, and entered as a Court Order on December 12, 1997 ("the December 1997 Order"). Under the terms of the settlement, the Board withdrew the First Denial Resolution and permitted the submission of revised Phase I plans to be reviewed under the Zoning Ordinance and SALDO as they existed on December 13, 1995. The settlement did not address the issue of how many times the Lindquists would be permitted to submit further revised plans.

On November 18, 1997, the Lindquists submitted a revised Phase I subdivision application ("Revised Phase I Plan"). In early 1998, the Lindquists and the Township met several times to discuss the Revised Phase I Plan. The Lindquists agreed to submit a

6

further revised plan ("Further Revised Phase I Plan"), and the Board agreed to extend the review period for the Further Revised Phase I Plan to July 30, 1998.

On July 20, the Lindquists informed the Township that the Further Revised Plan I would be submitted by the end of July, and proposed that the review period be extended until the end of August. The Township declined to extend the review period.

On July 22, the Board passed a resolution ("Second Denial Resolution"), which was apparently intended to reject the Revised Phase I Plan. However, the resolution actually rejected the Original Phase I Plan. The Board subsequently realized it had rejected the wrong plan, and on August 12, 1998, passed a new resolution that "re-adopted and confirmed" the Second Denial Resolution and amended it to include a rejection of the Revised Plan ("Third Denial Resolution").

Meanwhile, the Lindquists had filed the Further Revised Phase I Plan on July 31, 1998. The Township accepted the Further Revised Plan, but informed the Lindquists that it would not treat the Further Revised Plan as a revised plan under the December 1997 Order for the reason that the Second Denial Resolution had denied the subdivision application. The Third Denial Resolution set an August 31, 1998 deadline for review of the Further Revised Plan. The Lindquists informed the Township that it was obligated to treat the Further Revised Plan as a revised plan under the settlement, and that, if it treated the Further Revised Plan as a new plan, they were entitled to a ninety-day review period as provided by statute.

The Board disagreed. On August 26, 1998, the Board adopted another resolution ("Fourth Denial Resolution"), which rejected the Further Revised Plan as a revised plan. The Township also informed the Lindquists that it would accept the Further Revised Plan as a new plan, subject to review under the Zoning Ordinance and SALDO as they existed on the date of its submission. The Board eventually rejected the Further Revised Plan as a new plan on October 28, 1998.

On September 3, 1998, the Lindquists filed a mandamus action in the Court of Common Pleas of Bucks County, alleging that the Revised Plan should be "deemed approved" under § 508 of the Municipalities Planning Code, Pa. Stat. Ann. tit 53, § 10508. On January 19, 2000, the Bucks County Court held that the Second Denial Resolution of July 22, 1998 had rejected the wrong plan, that the Board had failed to comply with § 508 through its failure to take action on the Revised Plan by the July 30, 1998 deadline, and that, as a result, the Revised Plan was "deemed approved." In his opinion, Judge Clark found that "the Township ha[d] acted in this case not only in violation of Order of December 12, 1997 of the Bucks County Court, but also in violation of its own ordinances requiring review of subdivision applications." However, the basis for the court's ruling that the Revised Plan was "deemed approved" was the Township's failure to reject the Revised Plan by the statutory deadline.

The Township appealed the Bucks County Court Order. However, in December 2000, the parties reached a settlement that ended the state court litigation, but permitted

8

the Lindquists to proceed with this action alleging violations of their substantive due process rights, which they had filed in federal court in March of that year. The District Court, following a six-day non-jury trial, ultimately granted judgment in favor of the Township and its Board of Supervisors.

## II.

The Lindquists' appeal challenges several aspects of the District Court's ruling, including: (1) the application of the "shocks the conscience" standard to their substantive due process claim; (2) the determination that the Township's actions did not violate the "shocks the conscience" standard; (3) the denial of their motion to amend their complaint to include an equal protection claim; (4) the failure to give preclusive effect to certain state court findings; and (5) the decision to exclude evidence regarding the Township's treatment of other subdivision plans. The Township and the Board of Supervisors appeal the District Court's denial of their post-trial motion for attorneys' fees and costs.

## A.

First, the Lindquists contend that the District Court erred in applying the "shocks the conscience" standard because such a standard is inappropriate to apply to substantive due process claims against municipalities arising from land use decisions. We exercise plenary review over the District Court's choice and interpretation of legal standards. Beta Spawn, Inc. v. FFE Transportation Services, Inc., 250 F.3d 218, 223 (3d Cir. 2001).

In United Artists, we noted that "our cases have repeatedly acknowledged that

executive action violates substantive due process only when it shocks the conscience." Id. at 399-400. We saw no reason why land-use cases should be exempted from the shocks-the-conscience test, stating that "[l]and-use decisions are matters of local concern, and such disputes should not be transformed into substantive due process claims based only on allegations that government officials acted with 'improper' motives." Id. at 401-02. Accordingly, we conclude that the District Court applied the proper standard to the Lindquists' claim.

B.

Second, the Lindquists argue that "the Township deliberately acted in bad faith, violated its own ordinances and customary practices and procedures and violated two separate court orders," and that "[t]he Township participated in such egregious conduct because of their personal animus to [the Lindquists' representative] and with the intent of preventing the Lindquists from developing their property so that the Township would be in a better position to acquire the Lindquist property at a minimal cost to the Township." The District Court concluded that the Township "may have been negligent at times and in 1998 may have acted with improper motive toward the Lindquists and their representatives. However, there is nothing in the facts we have found to prove that the defendants' conduct was so egregious as to be 'conscience shocking.'" The Lindquists maintain that this conclusion is in error and that the Township's actions do satisfy the standard.

10

We exercise plenary review over the District Court's application of legal standards to the facts of the case. Beta Spawn, 250 F.3d at 223. We review the District Court's findings of fact for clear error. Id.

In United Artists, we joined other Courts of Appeals in applying the "shocks the conscience" standard to substantive due process claims in land use disputes. For example, in Chesterfield Development Corp. v. City of Chesterfield, 963 F.2d 1102 (8th Cir. 1992), a developer brought a § 1983 action claiming that the city had violated its substantive due process rights by enforcing an invalid zoning plan against it. In affirming the District Court's denial of the developer's claim, the Eighth Circuit stated that "a state-law error, no matter how fundamental, cannot in and of itself create a federal due-process violation." Id. at 1105. Furthermore, it noted that "[its] decision would be the same even if the City had knowingly enforced the invalid zoning ordinance in bad faith" because "[a] bad faith violation of state law remains only a violation of state law." Id. In its view, the enforcement of an invalid zoning ordinance was not a "truly irrational" governmental action giving rise to a substantive due process claim. Id.

The First Circuit considered a similar situation in PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28 (1st Cir. 1991). There, a developer brought a civil rights action against a Puerto Rico agency following the agency's rejection of the developer's application for a construction permit. The court held that "[the developer's] allegations that [agency] officials failed to comply with agency regulations or practices in the review

11

and approval process for the construction drawings are not sufficient to support a substantive due process claim." Id. at 32. The court also stated that "even assuming that [the agency] engaged in delaying tactics and refused to issue permits for the . . . project based on considerations outside the scope of its jurisdiction under Puerto Rico law, such practices, without more, do not rise to the level of violations of the federal constitution." Id.

These cases stand for the proposition that, without more, a violation of state law, even a bad faith violation of state law, will not support a substantive due process claim in a land-use dispute. See also Baker v. Coxe, 230 F.3d 470, 474 (1st Cir. 2000) ("[E]ven an arbitrary denial of [a building] permit in violation of state law - even in bad faith - does not rise above the constitutional threshold for equal protection and substantive due process claims."); Natale v. Town of Ridgefield, 170 F.3d 258, 262 (2d Cir. 1999) ("Arbitrary conduct that might violate zoning regulations as a matter of state law is not sufficient to demonstrate conduct so outrageously arbitrary as to constitute a gross abuse of governmental authority that will offend the substantive component of the Due Process Clause.") Rather, the governmental action must be so egregious and extraordinary that it "shocks the conscience."

Here, we are not entirely convinced that there has even been a violation of state law, much less any "conscience-shocking" behavior. The Lindquists maintain that the Township's actions were in defiance of the December 1997 Order. We view this to be

not entirely clear-cut.  And, even if the Township did violate the Order, the record is largely devoid of any facts that would suggest that the Township's actions were so egregious and extraordinary that they "shock the conscience."  The Lindquists have suggested that the Township was motivated by financial concerns and bias against their attorney, and that these motivations render the Township's actions "conscience-shocking."  Yet, we find little evidence that the Township or its officers were motivated by pecuniary gain.  In addition, although it is clear that the relationship between the Township and the Lindquists' attorney became bitter during the course of these events, the Township's actions cannot be said to have been due to any bias against him.  The District Court concluded that while the Township "may have been negligent" and "may have acted with an improper motive," desirous of thwarting development of the property, its conduct did not shock the conscience.  We concur.

Our dissenting colleague cites Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002), for the proposition that "deliberate indifference" and "protracted failure to even care" may be conscience shocking when officials have time to make unhurried judgments.  Id. at 547.  However, Leamer involved a prison inmate challenging the deprivation of a liberty interest.  Given that "[t]he assessment of what constitutes conscience-shocking behavior differs according to the factual setting," id., the test may be more easily satisfied in a prison setting than in a land-use setting.  More importantly, our view of the record does not indicate indifference or a failure to care on the part of the Township.

13

C.

Third, the Lindquists challenge the District Court's denial of their motion for leave to amend their complaint to include an equal protection claim, based on the Township's favorable treatment of a third party's subdivision application. We review a grant or denial of leave to amend for abuse of discretion. Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000).

The Supreme Court has stated that the Rule 15(a) mandate that leave to amend "shall be freely given when justice so requires" is to be heeded.

> In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. - the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962).

Here, the District Court denied the Lindquists' motion to amend for "undue delay." With regards to the issue of delay, our Court has stated that

> the passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become "undue," placing an unwarranted burden on the court, or will become "prejudicial," placing an unfair burden on the opposing party. The question of undue delay, as well as the question of bad faith, requires that we focus on the plaintiff's motives for not amending their complaint to assert this claim earlier; the issue of prejudice requires that we focus on the effect on the defendants.

14

Adams v. Gould, Inc., 739 F.2d 858, 868 (3d Cir. 1984), cert. denied, 469 U.S. 1122 (internal citations omitted).  See also Cureton v. NCAA, 252 F.3d 267, 273 (3d Cir. 2001) (stating that "the question of undue delay requires that we focus on the movant's reasons for not amending sooner").  Here, in its discussion, the District Court followed our directive in Adams that the Court should focus on the plaintiff's motives.  First, it noted the Lindquists' proffered reason for their two-year delay, namely, the Township's alleged failure to turn over certain documents.  Then, it disposed of this reason because the documents were public documents to which the Lindquists had access and, in addition, the Lindquists could have filed a motion to compel production.  In light of this reasoning, and given the fact that this case had already been pending for two years and was ready for trial, we cannot say that the District Court abused its discretion in denying the Lindquists leave to amend.

D.

Fourth, the Lindquists urge that the District Court erred when it failed to give preclusive effect to certain findings outlined in the state court's January 19, 2000 order.  We exercise plenary review over the District's Court decision regarding the preclusive effect of a state court judgment.  Del. River Port Auth. v. Fraternal Order of Police, 290 F.3d 567, 572 (3d Cir. 2002).

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires a federal court to give a state court judgment the same preclusive effect that it would be entitled to in a court of

15

that state.  Gregory v. Chehi, 843 F.2d 111, 118 (3d Cir. 1988).  Thus, the District Court was required to give the state court's findings preclusive effect if a Pennsylvania court would have been required to give them preclusive effect.

Turning to Pennsylvania law, we note that Pennsylvania has adopted the requirements of the Restatement (Second) of Judgments, regarding when a prior determination of a legal issue is conclusive in a subsequent action.  Clark v. Troutman, 502 A.2d 137, 139 (Pa. 1985).  In Pennsylvania, the doctrine of issue preclusion applies if: (1) the issue decided in the prior case is identical to the one presented in the subsequent action; (2) there was a final judgment on the merits; (3) the party against whom the doctrine is asserted was a party or in privity with a party in the subsequent case; (4) the party or person in privity with a party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment.  City of Pittsburgh v. Zoning Bd. of Adjustment, 559 A.2d 896, 901 (Pa. 1989).

Here, the January 19, 2000 state court order concluded that the Lindquists' Revised Plan was "deemed approved" under § 508 of the Municipalities Planning Code, Pa. Stat. Ann. tit. 53 § 10508.  In concluding that the Plan was "deemed approved," the Court of Common Pleas relied solely upon facts related to the Township's Board of Supervisors' failure to take action upon the Plan prior to the statutory deadline.  While the court did make other findings and agreed with the Lindquists that the Township had acted

16

in violation of both its own ordinances and the December 1997 Order, these findings were not essential to its final judgment. Accordingly, issue preclusion does not apply. As a result, the District Court's decision to give preclusive effect only to the facts that the Board had failed to take timely action and that the Revised Plan was "deemed approved" upon the Township's failure to take action, while not giving preclusive effect to any other state court findings, was appropriate.

E.

Fifth, the Lindquists claim that the District Court abused its discretion in making certain evidentiary rulings. During the course of the trial, the Lindquists sought to introduce documents and to solicit testimony regarding the Township's treatment of a third party's subdivision application, the Yerkes/Orleans plan, that was pending during the same time period when the Lindquists' application was being considered, as relevant to the issue of motive. In sustaining the Township's objection, the District Court noted that evidence regarding the Yerkes/Orleans application was not necessarily probative of whether the Township had acted improperly with regards to the Lindquists' application because there were different facts, because the Township could exercise discretion in granting waivers, and because the complexity and uniqueness of these situations makes comparisons cumbersome if not impossible. We review the District Court's ruling regarding the admissibility of evidence for abuse of discretion. Rinehimer v. Cemcolift, Inc., 292 F.3d 375 (3d Cir. 2002).

17

In assessing whether the Lindquists had proven their claim, the key question before the Court was whether the Township's treatment of the Lindquists "shocked the conscience," not whether the Township treated the Lindquists differently than it treated a third party. The evidence the Lindquists sought to introduce had nothing to do with the Township's treatment of the Lindquists.[4] Further, even if it were arguably relevant, we agree with the District Court that ascertaining whether the Yerkes/Orleans development was comparable to the Lindquist development in all important respects would have forced the District Court to conduct "a trial within a trial." As a result, we conclude that the District Court did not abuse its discretion in refusing to permit the introduction of this

---

[4]The dissent posits that even if the evidence of the treatment afforded Yerkes/Orleans was not probative of the motive of the Township vis a vis the Lindquist, it could be probative as to whether the treatment "shocked the conscience." We are at a loss to determine how this could be so unless the facts of the two situations were the same. The Lindquists contend that the same sixty reasons listed to justify denial of their application were listed as conditions for approval of the Yerkes/Orleans preliminary plan, and the dissent appears to read this contention as meaning the Lindquists' plan was rejected for the same reasons as the Yerkes/Orleans plan was approved. However, the record merely indicates that the Township had some of the same problems with the Lindquists' plan that the Township's consultants had with the Yerkes/Orleans preliminary plan, and that the consultants conditioned their recommendations regarding approval of the Yerkes/Orleans plan on these problems being rectified. It does not indicate what steps the Yerkes/Orleans developers took to address the problems identified in the preliminary plan, nor that the final Yerkes/Orleans plan eventually approved by the Township continued to exhibit these problems. The proffered evidence would only be relevant to the District Court's inquiry to the extent that the facts of the two proposed developments were virtually identical. Considering the maxim that every parcel of land is unique, this was highly unlikely.

18

evidence.[5]

F.

Finally, the Township and the Board claim the District Court erred when it denied their motion for attorneys' fees. We review a denial or grant of attorneys' fees for abuse of discretion. Loughner v. University of Philadelphia, 260 F.3d 173, 177 (3d Cir. 2001).

42 U.S.C. § 1988 provides that "in any action or proceeding to enforce a provision of § . . . 1983 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." A prevailing defendant is entitled to attorney's fees upon a finding that the plaintiff's action was frivolous, unreasonable or without foundation. Barnes Found. v. Township of Lower Merion, 242 F.3d 151, 157-58 (3d Cir. 2001).

The Township and the Board of Supervisors contend that they, as prevailing defendants, are entitled to attorneys' fees because the Lindquists' lawsuit was not brought to redress the Lindquists' alleged constitutional grievances, but rather to generate

---

[5]Our dissenting colleague believes that, as an alternative to finding a constitutional violation, we should remand the claim so that the Lindquists could have the opportunity to present new evidence in light of the heightened standard adopted between the close of trial and the District Court's judgment. While we have, as the dissent points out, acknowledged that "a change in law may warrant the reopening of a case where additional [evidence] would be pertinent to the change of law," Skehan v. Bd. of Trustees of Bloomsberg State College, 590 F.2d 470, 479 (3d Cir. 1978), rev'd on other grounds by Smith v. City of Pittsburgh, 764 F.2d 188 (3d Cir. 1985), here the Lindquists did not move to reopen for additional proof in light of the changed standard.

19

attorneys' fees for the Lindquists' legal representative. Even if we were to credit this theory, it does not necessarily render the action frivolous, unreasonable or without foundation. We note that at the time the Lindquists brought this action, the standard applicable to their due process claim was not settled. Only after the conclusion of trial did we announce in United Artists that a plaintiff pursuing a substantive due process claim in a land-use dispute must prove that the defendant's conduct "shocked the conscience." 316 F.3d at 401. This standard departed from our prior precedent, under which a plaintiff merely had to prove that the defendant had acted with an improper motive. See, e.g., Bello v. Walker, 840 F.2d 1124, 1129 (3d Cir. 1988). Here, the District Court stated that the Township and the Board "may have acted with an improper motive toward the Lindquists and their representatives," which would suggest that it might have been possible for the Lindquists to prevail under the "improper motive" standard. In light of the fact that the Lindquists might have been able to succeed under the standard in effect at the time they brought their claim, we cannot say that the action was frivolous, unreasonable or without foundation. Accordingly, the District Court did not abuse its discretion in denying attorneys' fees.

III.

For the reasons stated above, we will affirm.

─────────────────

Lindquist v. Buckingham Township, et al.

Nos. 03-2431, 03-2971

ROSENN, Circuit Judge, dissenting.

In the struggle to develop their land in Buckingham Township, Pennsylvania, the Lindquists encountered severe resistance from Township officials. The officials frustrated the Lindquists' efforts and wasted their time and resources. Because the majority holds that the Township's conduct is not sufficiently "conscience shocking" to constitute a violation of the Lindquists' substantive due process rights, I respectfully dissent.[6] Additionally, because the legal standard for this substantive due process claim changed while the District Court deliberated in this case, I believe the claim should be remanded so that the Lindquists may have the opportunity to present evidence that is now relevant under the new heightened standard. Lastly, I disagree with the majority's interpretation of our circuit's case law regarding a plaintiff's ability to amend a

---

[6] The majority defers heavily to the District Court's finding after a six day trial that nothing in the facts "was so egregious as to be 'conscience shocking,'" and fails to find error in the District Court's reasoning or ruling. (Maj. Op. at 3-4) While clear error review applies to the District Court's findings of fact, the application of those facts to the "conscience shocking" standard is a legal question that we review *de novo*. See, e.g., Srein v. Frankford Trust Co., 323 F.3d 214, 220 (3d Cir. 2003) (discussing the "mixed" standard of review). I take no exception to the facts as described by the District Court, and I also find the facts described by the Court of Common Pleas of Bucks County after its lengthy trial to be informative. However, after finding the facts, the District Court offered little analysis, and simply stated in conclusory fashion that these facts did not rise to the "shock the conscience" standard. I disagree with both the majority and the District Court because in my opinion, the facts presented in this record display arbitrary and malicious conduct on the part of the Township that rises to a conscience shocking level.

21

complaint. I believe that because the District Court's analysis of the Lindquists' motion to amend failed to articulate any undue burden on the court or prejudice to the non-moving party, denial of the motion was an abuse of discretion.

I.

The majority has explained the basic sequence of events that occurred between the Lindquists and the Township during the six year development application ordeal. I write to supplement the factual account, and to explain several points of divergence between us.

A. The Township's Misconduct

Even though the standard for this substantive due process claim changed from "improper motive" to "shocks the conscience" while the District Court deliberated in this case, the District Court still acknowledged in its opinion that the Township "may have acted with an improper motive toward the Lindquists and their representatives." Although improper motive is no longer sufficient to prove a substantive due process violation, identifying an improper motive is a factor in the conscience shocking behavior of a state actor. The Court of Common Pleas of Bucks County candidly addressed the Township's improper motive, acknowledging that "the Township proudly admits that it would like to preserve the Lindquist property." The Township's motivation to preserve the Lindquists' land was improper because under the zoning and land-use ordinances in effect at the time of the Lindquists' initial application, the cluster subdivision developments they sought were allowed on the Lindquists' land as a "by-right" use.

22

As the majority opinion acknowledges, the Township Board of Supervisors (the "Board") requested that the Lindquists forego their by-right use and pursue an alternate plan favored by the Board, in exchange for assurances that the Board would grant the required SALDO waivers and process the plans under the zoning ordinances as amended December 13, 1995 (the "1995 ordinances"). However, after inducing the Lindquists to surrender their by-right use of the cluster development, the Board rejected the plan revisions in June of 1997 and denied the original plans in Resolution No. 1533. This action forced the Lindquists to resubmit new plans to be reviewed now under the zoning ordinances as amended in 1997. This action was significant because the 1997 amendments to the ordinances prohibited several of the items in the Lindquists' original plans, and strategically removed the by-right use. This action set the tone for a series of other bad faith maneuvers launched by the Township against the Lindquists.

In response, the Lindquists filed suit against the Township in the Court of Common Pleas of Bucks County. The parties agreed to a settlement, which was entered as a court order (the "Court Order") requiring that the Township withdraw its denial of the plans and permit the Lindquists to submit revised plans to address the comments raised by the Township.

The majority here asserts that the settlement did not address how many times the Lindquists would be allowed to submit further revised plans after the original re-submission. However, the Court Order clearly stated that "[t]he Board will process and

review the Revised Plans for Phase I, and <u>any revisions thereto</u> in accordance with the Zoning Ordinance and SALDO, as they existed on December 13, 1995." (emphasis added)  So, while the Court Order may not have explicitly stated how many revisions would be allowed, it clearly anticipated the need for multiple revisions and required that <u>any</u> revisions would be considered under the 1995 ordinances.

The Board realized that as long as the Lindquists were cooperating with the Township Planning Commission and consultants to revise and improve the original plans, the Court Order required that the Board consider the plans under the 1995 ordinances, and this would eventually lead to an approval.  Therefore, the Board adopted a strategy to work around the Court Order almost immediately after the Order was signed.  For example, the District Court acknowledged that "[a]t the Board's direction, the Planning Commission had treated the revised plans as a new filing that did not relate back to the earlier submission."  Even in its pleadings before the Court of Common Pleas, the Township admitted that it attempted to reject the revised Phase I subdivision plan because it knew that the Lindquists "were getting closer to compliance with the Township Ordinances and wanted to reject the Revised Phase I Subdivision Plan before the Lindquists submitted any further revised plans."

Furthermore, during deposition, the Township Manager, Deborah Rendon, admitted the following:

> Q:  So they acted – the Board of Supervisors acted to deny the revised subdivision application before the Lindquists had an opportunity to

24

> submit further plans to the Township, even though the [Court Order] specifically permitted further revised plans to be submitted, right?
>
> A:     Yes.

The Township argues that after the Court Order was signed in 1997, it proceeded in good faith, as evidenced by a series of six meetings between the Lindquists and the Planning Commission aimed at reaching an agreement on the plans. To begin, this argument is undercut by the Township's admission that it rejected the plans because the Lindquists were getting closer to compliance. Furthermore, the Township's claim of good faith is absurd, in light of the shameless tactics on which the Township embarked in its effort to reject the plans.

As the majority recognizes in its footnote 2, the Board was the only Township entity empowered to approve the Lindquist plans. Any amount of progress made between the Lindquists and the Planning Commission was irrelevant if the Board had predetermined that it would not provide its approval. On July 22, 1998, when the Township's deadline for taking action on the plans was fast approaching, the Board rejected a routine request from the Lindquists to submit further revised plans and hastily enacted Resolution No. 1598 rejecting the plans. The District Court noted that "the Lindquists had no prior knowledge that the Board was set to act on the plan on this date." (D. Ct. Op. at 12) In its haste, the Board actually denied the wrong plans, and the deadline for action on the Lindquists' most current submission passed. In an attempt to correct its mistake, the Board adopted Resolution No. 1599 rejecting the most current plans.

25

In the meantime, the Lindquists submitted a revised set of plans and argued that the Board had violated the 1997 Court Order by not considering them to be revised plans subject to consideration under the 1995 ordinances. Alternatively, the Lindquists argued that if the plans were in fact a new submission, they were entitled to a 90-day statutory review period including review letters by the Township's consultants. (D. Ct. Op. at 13) The Board disagreed, and less than one month after receiving the latest submission, the Board enacted Resolution No. 1600 denying Lindquist's most recent submission without full review. This denial was issued on the same day that the Township consultants submitted their review letters, leaving the Lindquists no conceivable opportunity to respond to the comments. (D. Ct. Op. at 13)

Throughout this process, the Township flagrantly violated its own ordinances and procedures, as well as the 1997 Court Order. To further underscore the Board's bad faith and arbitrary approach, the first 57 reasons for denial stated in Resolution No. 1600 in August 1998 were the same reasons verbatim as those listed in the first denial filed in June of 1997, Resolution No. 1533. (D. Ct. Op. at 13) However, in the intervening 14 months, the Lindquists had addressed all of those issues. Thus, it became clear that the Board did not actually evaluate the Lindquists' plans, but arbitrarily denied them. The Township's claim that the Lindquists were provided with a meaningful review process and access to the Planning Commission to negotiate acceptable plans is disingenuous. The Township actually wasted the Lindquists' time and resources in seeking an approval

26

when the Township knew that it had no intention of ever granting it.

## B. Conscience Shocking Standard

In <u>United Artists Theatre Circuit, Inc. v. Township of Warrington</u>, 316 F.3d 392 (3d Cir. 2003), this court adopted a new heightened standard for substantive due process cases in the land-use context. "Improper motive" was no longer the standard; the new standard was conduct that "shocks the conscience." Therefore, it is no longer sufficient for a developer to prove that a state actor intentionally worked against the developer's interests in violation of state laws or ordinances. The developer must now show that the state actor's behavior was so egregious that it was "shocking." Despite the inherently subjective nature of this inquiry, the courts have attempted to set some guiding standards in this area. For example, when a suit is brought against a state actor challenging conduct in response to an emergency situation, "more culpability is required to shock the conscience to the extent that the state actors are required to act promptly under pressure." <u>Schiber v. City of Philadelphia</u>, 320 F.3d 409, 419 (3d Cir. 2003). Conversely, when officials have time to make unhurried judgments, as was true in this case, indifference and "protracted failure even to care" may be truly conscience shocking. <u>Leamer v. Fauver</u>, 288 F.3d 532, 547 (3d Cir. 2002).[7]

---

[7] The majority at p.14 distinguishes <u>Leamer</u> because it deals with a liberty interest in a prison setting, where the conscience shocking standard may be more easily satisfied. Yet, state actors in a prison setting share a commonality with municipal zoning boards; they both maintain complete control over their subjects' interests and may abuse their positions of power if they fail to follow their designated rules and regulations. In both instances,

The First Circuit has explained that "even where state officials have allegedly violated state law or administrative procedures, such violations do not ordinarily rise to the level of a constitutional deprivation." PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 31 (1st Cir. 1991) (on petition for rehearing). Furthermore, "mere bad faith refusal to follow state law in such local administrative matters simply does not amount to deprivation of due process where the state courts are available to correct the error." Chiplin Enterprises v. City of Lebanon, 712 F.2d 1524, 1528 (1st Cir. 1983).

In United Artists, this court agreed with the Court of Appeals for the First Circuit that the federal courts should not sit as a "zoning board of appeals," particularly when state courts are available for such a task. 316 F.3d at 402 (citing Creative Environments, Inc. v. Estabrook, 680 F.2d 822, 833 (1st Cir. 1982). I, of course, agree. However, in this case the Lindquists sought relief in the state courts, but the Township blatantly ignored the state Court Order. The Township persisted in arbitrary and abusive treatment toward the Lindquists. Our court has observed that "'the core of the concept' of due process is 'protection against arbitrary action' and that 'only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" United Artists, 316 F.3d at 399 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998)). In my view, the

the Constitution may be the only check on abusive practices, regardless of whether it is a liberty or a property interest at stake. When state actors show egregious indifference, bordering on malfeasance and contempt in my view of this case, Constitutional protection is appropriate.

Township deliberately played cat-and-mouse with the Lindquists, wasting their resources and time for a half-dozen years, arbitrarily denying multiple versions of their applications for a development to which they were initially entitled as a matter of right. To this arbitrary and egregious behavior, the Township added insult to injury by flagrantly disobeying the county Court Order.

When a township lures one of its landowners to give up a right established by township ordinance, induces him to comply with its demands for development approval only to have such compliance arbitrarily rejected, deliberately engages in a frustrating pattern to waste the landowner's resources and time over a period of years, and then flagrantly disregards the Order of a state court, such egregious conduct "shocks the conscience" in a constitutional sense. Under such circumstances, I disagree with the majority and the District Court; a federal court should grant relief.

II.

The Lindquists also claim that the District Court abused its discretion by denying their attempt to introduce evidence regarding the Yerkes/Orleans application, a neighboring land owner's application for a similar development project that was approved by the Township without any of the strong resistance encountered by the Lindquists. The majority finds no abuse of discretion because the evidence does not involve the Township's treatment of the Lindquists, and because it could not aid the Court in determining whether the treatment "shocked the conscience." I do not agree.

29

When the District Court ruled on this evidence at trial, it was still operating under the "improper motive" standard. The Court clearly stated that favorable treatment of a similar development application would not be relevant to determine if there was "improper motive" towards the Lindquists' application. However, after the trial concluded, but before issuing its decision, this court issued its decision in United Artists, changing the standard of review to "shocks the conscience." Although evidence relevant to a determination of an "improper motive" might have been limited to the interaction between the Lindquists and the Township, "shocks the conscience" is a much broader standard. Under this standard, therefore, a wider range of evidence is relevant.

In United Artists, we noted that "the measure of what is conscience-shocking is no calibrated yard stick." 316 F.3d at 399 (quoting Lewis, 523 U.S. at 847). Rather, "conduct that is sufficiently egregious to shock the conscience varies depending on the context." United Artists, 316 F.3d. at 399 n.5 (emphasis added). Under this standard, evidence of the Township's treatment of a similar application much more favorably than the Lindquists' and with much greater dispatch could provide important information and perspective to show "conscience shocking" conduct.

The Lindquists assert that denying the multiple iterations of their plan outright, rather than approving it with conditions, was not the standard practice for the Township. The Lindquists proffer that the Yerkes/Orleans application for a cluster subdivision development submitted in January 1997 was almost identical to the Lindquists

30

application. The Township approved the Yerkes/Orleans application after only six months of review with 276 conditions and comments. In contrast, the Lindquists' plans were denied after four years of review based on 60 comments. After reviewing Township records, the Lindquists determined that the same 60 reasons listed to justify denial of the Lindquists' application were also listed as conditions for approval in the Yerkes/Orleans application. If the Lindquists could substantiate these claims with reliable evidence, I believe that the evidence would be an important relevant factor in the fact finder's determination with the other evidence referred to above, whether the Township was acting with the requisite level of capriciousness that "shocks the conscience."

We have acknowledged that "a change in legal standards may warrant the reopening of a case where additional testimony would be pertinent to the change of law." Skehan v. Board of Trustees of Bloomsburg State College, 590 F.2d 470, 479 (3d Cir. 1978) *rev'd on other grounds by* Smith v. City of Pittsburgh, 764 F.2d. 188 (3d Cir. 1985). Precedent in this circuit and simple fairness require that this case be remanded to allow the Lindquists the opportunity to present all of their evidence that would now be relevant under the new standard established in United Artists.

III.

The District Court denied the Lindquists' motion to amend their complaint to add an equal protection claim. The District Court denied the motion on the basis of "undue delay." The majority here advances an abbreviated analysis of this issue, which in my

31

view does not comport with the clear precedent in our circuit.

The majority cites to <u>Adams v. Gould, Inc.</u>, 739 F.2d 858, 868 (3d Cir. 1984), which provides a thorough explanation of the standard for review for a denial of a motion to amend. <u>Adams</u> explained that the mere passage of time will not require a motion to be denied; the delay must be deemed "undue" by either placing a burden on the court or causing prejudice to the opposing party. <u>Id.</u> The <u>Adams</u> opinion further clarified that questions of delay and bad faith require inquiry into the moving party's motives for not amending the complaint earlier, and questions of prejudice require a focus on the effects on the non-moving party. <u>Id.</u>

The majority asserts that when the District Court reviewed the Lindquists' explanation for failing to amend their complaint earlier in the proceedings, the Court was actually following our directive in <u>Adams</u> by exploring the Lindquists' motives. I do not think this is so. First, the District Court considered the Lindquists' explanation for the delay in their motion to amend, but did not actually explore any improper motivations. Second, even if the District Court's brief inquiry into this matter could be considered a focus on motivations, the District Court did not find that Lindquists harbored any bad faith or improper motivations that would justify denial of the motion.

The Lindquists explained that they requested documentation of the Yerkes/Orleans application during discovery, and the Township failed to provide the records. Therefore, the Lindquists did not learn about the preferential treatment afforded to the

32

Yerkes/Orleans application until after discovery when they uncovered these documents themselves from public records. Rather than criticizing the Township for any discovery violation, the District Court blamed the Lindquists for not seeking the public records sooner, and failing to file a motion to compel discovery. It is unmistakable from the District Court's terse order denying the motion that the Court did not actually inquire into the Lindquists' motivation for delay in amending their complaint. Nor did the Court find any improper motivation by them. Rather, the District Court concluded that the Lindquists could have discovered the information sooner, and denied the motion for an apparent lack of diligence.

This court has held that "prejudice to the non-moving party is the touchstone for the denial of an amendment [of a claim]." Cornell & Co. v. Occupational Safety & Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-31 (1971)). Furthermore, "the obligation of the trial court in its disposition of the motion is to articulate the imposition or prejudice caused by the delay, and to balance those concerns against the movant's reason for delay in asserting the motion." Coventry v. United States Steel Corp., 856 F.2d 514, 520 (3d Cir. 1988) (emphasis added). In this case, the District Court did not articulate any prejudice to the Township or burden on the Court. The Court's explanation of actions that the Lindquists could have taken to obtain the evidence sooner does not amount to an articulation of burden or prejudice. Furthermore, any cursory inquiry into the Lindquists'

33

"motivation" does not satisfy the Court's obligation in this matter, particularly when the Court failed to find any bad faith motivation. In my view, the District Court abused its discretion in denying the Lindquists' motion to amend.[8]

## IV.

In conclusion, our opinion in United Artists brought this circuit in line with most other circuits by adopting the "shocks the conscience" standard for substantive due process claims in a land-use setting. However, if substantive due process claims are to remain viable under this standard, we must be willing to recognize when a state actor's conduct is so egregious and arbitrary so as to violate the requirements of the Fourteenth Amendment. "Shocks the conscience" is an extremely difficult standard to meet, but it is not insurmountable. I believe that the evidence in this case shows that the Township purposefully obstructed the Lindquists' right to pursue a legitimate use of their land, and consistently and systematically abused its authority and discretion. Not only did the Township violate its own laws, but when the Lindquists sought relief in the state court, the Township frustrated that relief by violating the county Court Order. At this point, I believe that the Township violated the Lindquists' due process rights.

---

[8] Furthermore, as a prudential matter, I believe that an equal protection claim would be preferable in this case because it avoids the cumbersome and subjective "shocks the conscience" analysis. As Justice Scalia noted in a concurring opinion in City of Cuyahoga Falls, Ohio v. Buckeye Community Hope Foundation, 538 U.S. 188, 200-01 (2003), more specific constitutional claims such as equal protection are preferable to generalized substantive due process claims.

Furthermore, even if reasonable minds may differ regarding what shocks their conscience, I believe that the District Court abused its discretion by denying the Lindquists' motion to amend their claim, and by failing to admit evidence of the Township's more favorable treatment of other land-use applicants. I would reverse the District Court on both of these grounds, remand the case to permit the Lindquists to pursue both equal protection and substantive due process claims, and allow the evidence of the Yerkes/Orleans application.

Regarding the other issues raised on appeal, I would concur with the majority that "shocks the conscience" is the appropriate standard, and that preclusive effect should not be given to the findings of the county court. I agree that the District Court did not abuse its discretion by denying the Township and Board's motion for attorneys' fees.